THE PEOPLE *ex rel.* TYRONE C. FAHNER, Attorney General, Plaintiff-Appellant, *v.* CLIMATEMP, INC., *et al.*, Defendants-Appellees.— THE PEOPLE *ex rel.* TYRONE C. FAHNER, Attorney General, Plaintiff-Appellant, *v.* BORG, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   Nos. 80-2200, 80-2201 cons.

Opinion filed November 17, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Thomas M. Genovese, Ardath A. Hamann, and Bruce J. Baker, Assistant Attorneys General, of counsel), for appellant.

Mayer, Brown & Platt, of Chicago (Bryson P. Burnham and John D. Donlevy, of counsel), for appellee Gideon Engineering Corp.

Friedman & Koven, of Chicago (John B. Simon and Herbert L. Zarov, of counsel), for appellees Borg, Inc., Jeffry Berg, Howard Salzman, and Gideon Goldschmidt.

Michael B. Nash, of Chicago, for appellees Climatemp, Inc., and Victor Comforte.

Tim J. Kerr, of Crowley, Fuller and Manning, of Chicago, for appellees Ideal Heating Co., Edward Usher, Zack Co., and Charles L. Howard.

Thomas Campbell, of Gardner, Carton and Douglas, of Chicago, for appellee Mehring & Hanson-Wendt, Inc.

Michael W. Coffield, Charles W. Deuser, and Michael D. McCormick, all of Coffield, Ungaretti, Harris and Slavin, of Chicago, for appellee Robert F. Lawinger, Jr.

Sheldon Davidson and Marilee Roberg, both of Pedersen & Houpt, of Chicago, for appellee Piping Systems, Inc.

Earl L. Simon, of Wolfe, Klein and Bonner, of Chicago, for appellees Bellis-Hanley, Inc., Stanley B. Bellis, and Richard S. Wise.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Two cases presenting identical questions of law are consolidated for appeal. In both cases, the State asserts that the defendants have violated provisions of the Illinois Antitrust Act (Ill. Rev. Stat. 1979, ch. 38, par. 60—1 *et seq.*) (the Act), and the State seeks to impose civil fines pursuant to section 7(4) of the Act. In People *ex rel.* Fahner v. Climatemp, Inc., *et al.*, the defendants are sheet metal contractors and the sheet metal workers' union. In People *ex rel.* Fahner v. Borg, Inc., *et al.*, the defendants are piping contractors. The State charges that both groups of defendants have violated section 3(1) of the Act by engaging in bid-rigging conspiracies with respect to public works construction in the Chicago area.

The Climatemp action was filed on November 21, 1979. On the same day, the State filed a class action lawsuit in Federal court seeking treble damages. The Federal action joined the same defendants as the State action and alleged the same antitrust violations. The Federal lawsuit includes claims under the Sherman Act (15 U.S.C. §§1-7 (1976)) and the Clayton Act (15 U.S.C. §§15, 26 (1976)) and a pendent treble damages claim under the Illinois Antitrust Act. Plaintiffs in the Federal action are the State of Illinois, the County of Cook, the Chicago Board of Education, and the class of public entities similarly situated.

The Borg action was filed on December 14, 1979. On the same day, the State filed a parallel Federal treble damages class action nearly identical to the Climatemp suit already pending in Federal court. The Attorney General represents the State in both of the State court "civil fine" actions. In the Federal lawsuits, the Attorney General represents the State and the Chicago Board of Education; the County of Cook is represented by the State's Attorney. The Federal class actions remain pending in the district court.

In the Borg and Climatemp State actions, the defendants moved to dismiss the State's complaint on two grounds. Defendants contend that (1) section 7(4) of the Illinois Antitrust Act precludes the State from maintaining both a civil treble damages action and a civil action to recover a penalty, and (2) section 48(1)(c) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(c)) mandates dismissal of an action when another action is pending between the same parties for the same cause. In Climatemp, the trial court granted defendants' motion to dismiss the State's complaint, citing both of the proffered bases. In Borg, the trial court also dismissed the complaint but declined to rule on the basis of section 48(1)(c) of the Civil Practice Act or section 7(4) of the Illinois

Antitrust Act. Instead, the trial court found that "it is an abuse of power under the particular circumstances of this case for the State to bring both this action and a pending Federal action * * * for the same offense." The State's appeals from the dismissals in Borg and Climatemp have been consolidated in this court.

The construction of section 7(4) of the Illinois Antitrust Act is a question of first impression. That section states:

> "In lieu of any penalty otherwise prescribed for a violation of this Act, and in addition to an action under Section 7(1) of this Act, the Attorney General may bring an action in the name and on behalf of the people of the State against any person, trustee, director, manager or other officer or agent of a corporation, or against a corporation, domestic or foreign, to recover a penalty not to exceed $50,000 from every person who committed any act herein declared illegal. The action must be brought within 4 years after the commission of the act upon which it is based." (Ill. Rev. Stat. 1979, ch. 38, par. 60—7(4).)

Defendants maintain that the trebling of damages (allowed by section 7(2) of the Act) amounts to a penalty, and the opening line of section 7(4) ("In lieu of any penalty otherwise prescribed * * *") precludes the State from seeking both treble damages and civil fines. The State argues that the penalties "otherwise prescribed" are the criminal sanctions imposed by section 6 of the Act. Treble damages, in the State's view, are compensatory rather than penal. See L. Vold, *Are Threefold Damages under the Anti-Trust Act Penal or Compensatory?* 28 Ky. L.J. 117 (1940) (arguing that actual damages are inadequate when a plaintiff's business has been destroyed and that trebling of damages is therefore compensatory).

■■ The State's argument that treble damages are wholly compensatory defies both logic and the plain wording of the Act. Section 7(2), which provides for trebling of damages in certain instances, states that "the person injured shall be awarded 3 times the amount of actual damages." (Ill. Rev. Stat. 1979, ch. 38, par. 60—7(2).) Since "actual damages" are intended to make the plaintiff whole, any multiplication of the amount of actual damages serves to increase the award beyond the merely compensatory. A comment by Judge Learned Hand, referring to the Federal treble damages action, is here apropos: "The remedy provided is not solely civil; two thirds of the recovery is not remedial and inevitably presupposes a punitive purpose." *Lyons v. Westinghouse Electric Corp.* (2d Cir. 1955), 222 F.2d 184, 189; see also *Bertha Building Corp. v. National Theatres Corp.* (2d Cir. 1959), 269 F.2d 785, 789, *cert. denied* (1960), 361 U.S. 960, 4 L. Ed. 2d 542, 80 S. Ct. 585 (antitrust treble

damages actions are "private suits for damages which are exemplary in part but not wholly unrelated to actual loss").

Several Federal court decisions have viewed the trebling of damages as a penalty. (See, *e.g.*, *Schiffman Bros. v. Texas Co.* (7th Cir. 1952), 196 F.2d 695, 697, and cases cited therein.) Illinois courts have not considered the issue since the turn of the century, when the issue was not the trebling of damages under the Illinois Antitrust Act but a treble damages provision of "An Act to prevent extortion and unjust discrimination in the rates charged * * * [by] railroads." (See Rev. Stat. 1885, ch. 114, pars. 124-133.) The Illinois Supreme Court, construing the treble damages provision of this act, deemed such damages a statutory penalty. (See *Atchison, Topeka & Santa Fe Ry. v. People* (1907), 227 Ill. 270, 279, 81 N.E. 342; *Chicago, Burlington & Quincy R.R. v. Jones* (1894), 149 Ill. 361, 397, 37 N.E. 247.) In *Hoskins Coal & Dock Corp. v. Truax Traer Coal Co.* (7th Cir. 1951), 191 F.2d 912, *cert. denied* (1952), 342 U.S. 947, 96 L. Ed. 704, 72 S. Ct. 555, a Federal circuit court, citing the Illinois treble damages cases involving railroads, held that the trebling of antitrust damages is a penalty under Illinois law. (191 F.2d 912, 914; see *Schiffman*, at 696-97 (reaffirming the *Hoskins* rationale and result).) The *Hoskins* and *Schiffman* cases construed Illinois law for the purpose of applying an Illinois statute of limitations to a Federal antitrust suit. Other courts, construing the law of other States, have held that treble damages are not a statutory penalty. See, *e.g.*, *Chattanooga Foundry & Pipe Works v. City of Atlanta* (1906), 203 U.S. 390, 51 L. Ed. 241, 27 S. Ct. 65 (construing a Federal statute of limitations and Tennessee law); *Englander Motors, Inc. v. Ford Motor Co.* (6th Cir. 1961), 293 F.2d 802, 807 (construing Ohio law); *Bertha Building Corp.*, at 789 (construing New York law); *Holley v. Coggin Pontiac, Inc.* (1979), 43 N.C. App. 229, 242, 259 S.E.2d 1, 9-10; *Tulsa Ready-Mix Concrete Co. v. McMichael Concrete Co.* (Okla. 1972), 495 P.2d 1279, 1283; contra, *Powell v. St. Louis Dairy Co.* (8th Cir. 1960), 276 F.2d 464, 467 (construing Missouri law); *Gordon v. Loew's, Inc.* (3d Cir. 1957), 247 F.2d 451, 457 (construing New Jersey law); *cf. John Mohr & Sons, Inc. v. Jahnke* (1972), 55 Wis. 2d 402, 198 N.W.2d 363, 368 (under Wisconsin law, treble damages are punitive; allowing punitive damages in addition to treble damages imposes two penalties for the same act and violates due process).

■■ We do not rely solely on the proposition that the word "penalty" in section 7(4) encompasses treble damages. The wording of section 7(4) reveals that a principle of statutory interpretation is applicable: *expressio unius est exclusio alterius.* Section 7(4) begins, "In lieu of any penalty otherwise prescribed * * *, and in addition to an action under Section 7(1) of this Act, the Attorney General may bring an action [for civil penalties]." Section 7(1) of the Illinois Antitrust Act authorizes the

Attorney General to bring a civil action to enjoin violations of the Act. (Ill. Rev. Stat. 1979, ch. 38, par. 60—7(1).) The statute therefore expressly allows concurrent civil actions to restrain violations and to impose fines. Since section 7(2) of the Act authorizes the State and other public entities to bring civil treble damages actions, the legislature's failure to say "in addition to actions under Sections 7(1) *and 7(2)*" suggests a conscious omission of the treble damages lawsuit from the list of actions compatible with the claim for civil penalties. See 2A A. Sutherland, Statutory Construction §47.23, at 123 (1973); see also *Howlett v. Doglio* (1949), 402 Ill. 311, 320, 83 N.E.2d 708 (the enumeration of certain things in a statute implies the exclusion of all other things).

Federal courts have articulated the purpose of trebling a private plaintiff's antitrust recovery, and this reasoning supports the conclusion that the State must choose between an action for civil penalties and a treble damages action. In *Kinnear-Weed Corp. v. Humble Oil & Refining Co.* (5th Cir. 1954), 214 F.2d 891, *cert. denied* (1955), 348 U.S. 912, 99 L. Ed. 715, 75 S. Ct. 292, the court stated: "The grant of a claim for treble damages to persons injured was for the purpose of multiplying the agencies which would help enforce the antitrust laws and therefore make them more effective." (214 F.2d 891, 893; see *United States v. Borden Co.* (1954), 347 U.S. 514, 518, 98 L. Ed. 903, 908, 74 S. Ct. 703, 706 (private treble damages action supplements government enforcement of antitrust laws).) Unlike the private plaintiff, the State does not need the incentive of trebled damages to spur it to action against antitrust violators. It is the duty of the Attorney General to enforce the Illinois Antitrust Act. (Ill. Rev. Stat. 1979, ch 38, pars. 60—6, 60—7.) Although the State is expressly allowed the same right as other injured parties to sue for threefold damages, two-thirds of the State's recovery in such a case must be recognized as a penalty. The State can therefore choose the civil penalty it will seek—trebled damages under section 7(2) or civil fines under section 7(4). Under this construction, the trebling of damages, which serves as an incentive to the private plaintiff, acts as the State's civil sanction against the antitrust violator.[1]

Defendants also contend that section 48(1)(c) of the Civil Practice Act precludes the State from maintaining two separate actions arising from the same alleged antitrust violations. Section 48 states:

"(1) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds.

---

[1] This analysis applies only to civilly imposed sanctions. Section 6 of the Illinois Antitrust Act provides criminal sanctions for violations of the Act. Nothing in the statute suggests that the State may not maintain a civil treble damages action concurrently with a criminal prosecution. The standard of proof for a criminal conviction is, of course, more rigorous than that required for civil liability.

* * *

(c) That there is another action pending between the same parties for the same cause." (Ill. Rev. Stat. 1979, ch. 110, par. 48.)

Defendants rely on *Bonovich v. Convenient Food Mart, Inc.* (1974), 18 Ill. App. 3d 884, 310 N.E.2d 710, where a division of this court relied on section 48(1)(c) in affirming the dismissal of a private action for antitrust treble damages. In *Bonovich*, the State filed an action to enjoin an alleged violation of the Illinois Antitrust Act. Thereafter, the plaintiff filed a civil treble damages action against the same defendants, alleging the same antitrust violations. The defendants prevailed against the State and the private plaintiff's action was subsequently dismissed. The appellate court affirmed, holding that the State's action, brought by the Attorney General on behalf of the People of the State of Illinois involved the same parties and the same cause and therefore precluded the plaintiff's private action. (*Bonovich*, at 886.) Although the "same parties" requirement of section 48(1)(c) does not demand identity of parties (see *People ex rel. Phillips Petroleum Co. v. Gitchoff* (1976), 65 Ill. 2d 249, 255, 357 N.E.2d 534), we believe that the *Bonovich* court's definition of "same parties" is overly broad. If an action brought in the name of the People of the State of Illinois is held to encompass the "same parties" as an action brought by a single Illinois resident, then the State's attempt to enforce laws such as the Illinois Antitrust Act could be hobbled by the fact that a private action for the same cause was already pending. Such a result cannot have been the legislature's intent. The *Bonovich* result is also suspect because there were not two actions pending when the plaintiff's private suit was dismissed: the State's action had already ended with a finding in favor of the defendants. (See *Bonovich*, at 885.) On these facts, section 48(1)(c) was inapplicable, and we decline to follow the *Bonovich* decision.

Nevertheless, other Illinois authorities support a finding that the cases at bar involve the "same parties" and the "same cause" as the Federal class actions and were therefore subject to dismissal under section 48(1)(c). In *Skolnick v. Martin* (1964), 32 Ill. 2d 55, 203 N.E.2d 428, *cert. denied* (1965), 381 U.S. 926, 14 L. Ed. 2d 684, 85 S. Ct. 1561, our supreme court held that the "same cause" requirement of section 48(1)(c) refers to actions arising out of the same transaction or occurrence. (See *Skolnick*, at 57.) The State does not dispute the applicability of the *Skolnick* decision and does not contend that the cases at bar and the Federal class actions are not the "same cause."

The State does argue, however, that the instant cases and the Federal court lawsuits do not involve the same parties. In the cases at bar, the State is the sole plaintiff. In the Federal class actions, the named plaintiffs are the State, Cook County, the Chicago Board of Education, and the class of public entities injured by the alleged bid-rigging conspiracies. In *Anagnost v. Hammond Corp.* (1979), 73 Ill. App. 3d 667, 392 N.E.2d 335,

the plaintiff in the State court action was a member of a class of stockholders that was seeking similar relief in a class action in Federal court. The appellate court found that the class action embraced the rights of the individual plaintiff and that the "same parties" requirement of section 48(1)(c) had been met. (See *Anagnost*, at 670-71.) In the instant cases, the State is more than a member of the plaintiff class in Federal court—the State is one of the class representatives.

■■ The State, however, argues that "the State" in the Illinois cases is not the same party as "the State" in the Federal class actions because the State plays differing roles in the two forums. The gist of this "dual capacity" argument is that in the civil fine actions the State is acting in its capacity as sovereign, and in the Federal class actions the State is acting in its proprietary capacity. This argument, though imaginative, is rebutted by the established rule that the "same parties" language in section 48(1)(c) requires only substantially similar parties, not identical parties. (See, *e.g.*, *Phillips Petroleum Co.*, at 255; *Baker v. Salomon* (1975), 31 Ill. App. 3d 278, 282, 334 N.E.2d 313.) Regardless of the different roles taken by the State in various circumstances, we find that the "sovereign" State is substantially similar to the "proprietary" State, that the cases at bar therefore involve the same parties and the same causes as the lawsuits in Federal court, and that section 48(1)(c) applies.

■■ Defendants assume that if the requirements of section 48(1)(c) have been met, then section 48 mandates dismissal of the State's complaint. This assumption is incorrect. In the recent case of *A. E. Staley Manufacturing Co. v. Swift & Co.* (1980), 84 Ill. 2d 245, 419 N.E.2d 23, our supreme court acknowledged that the purpose of section 48(1)(c) is to avoid duplicative litigation, but held that a trial court can, in the exercise of its discretion, deny a section 48(1)(c) motion and permit multiple actions between the same parties. (See *A. E. Staley Manufacturing Co.*, at 252-53.) In *Staley*, the supreme court reversed the decision of a trial court that believed it had no discretion to deny a motion under section 48(1)(c). (*A. E. Staley Manufacturing Co.*, at 253.) Reviewing the records, we do not believe that either of the trial courts below underestimated the extent of its discretion, as did the trial court in *Staley*. We conclude that to the extent the dismissals below were based on section 48(1)(c), the decisions should be affirmed.

In the Climatemp action, section 48(1)(c) was one of the stated grounds for dismissal of the complaint. In the Borg action, the trial court ruled only that the Attorney General abused his power by maintaining similar actions in two forums. We find that the dismissals were authorized on statutory grounds: section 7(4) of the Illinois Antitrust Act and section 48(1)(c) of the Civil Practice Act. In view of this conclusion, we need not rule on the nonstatutory grounds relied on by the trial court in Borg.

Nevertheless, we note that the cases generally afford a broad leeway to the prosecutorial decisions of the Attorney General. In *People ex rel. Barrett v. Finnegan* (1941), 378 Ill. 387, 38 N.E.2d 715, our supreme court said, "[The Attorney General] has arbitrary discretion to institute proceedings in any case of purely public interest." (378 Ill. 387, 393.) In *People ex rel. Elliott v. Covelli* (1953), 415 Ill. 79, 112 N.E.2d 156, the court suggested that the Attorney General abuses his power when he repeatedly brings and dismisses charges in a capricious and vexatious manner. (See *Covelli*, at 86-87.) The *Covelli* decision, while treating a different alleged abuse of power, indicates that the caprice and vexatiousness of the Attorney General's actions must reach a fairly high level before the courts may interfere with his prosecutorial discretion. We do not believe that the Attorney General's actions in the cases at bar approached such a level.

The question before the reviewing court, however, is the correctness of the result reached below and not the correctness of the trial court's reasoning. (*People v. York* (1963), 29 Ill. 2d 68, 71, 193 N.E.2d 773.) The dismissal of the complaints for civil fines was proper under both section 7(4) of the Illinois Antitrust Act and section 48(1)(c) of the Civil Practice Act. We therefore affirm the decisions in Borg and Climatemp.

Affirmed.

HARTMAN, P. J., and PERLIN, J., concur.