LA SALLE NATIONAL BANK, Trustee, *et al.*, Plaintiffs-Appellees, v. HELRY CORPORATION, Defendant-Appellant.

First District (2nd Division)  No. 84—2508

Opinion filed September 17, 1985.

Gerald B. Lurie, of Rudnick & Wolfe, of Chicago, for appellant.

Michael R. Flaherty, of Keck, Mahin & Cate, of Chicago, for appellees.

JUSTICE BILANDIC delivered the opinion of the court:

This is a landlord-tenant dispute in which defendant Helry Corporation was found to have violated two provisions of its lease with plaintiffs La Salle National Bank, as trustee (hereinafter LNB), and its agent U.S.C.C. Management Company (hereinafter USCC). Defendant, before it was sued in this action, filed a declaratory judgment action that sought a declaration of its rights under the lease. Three weeks later, defendant was sued by plaintiffs in a forcible entry and detainer action. Defendant moved to consolidate the actions, but the motion was denied by the assignment judge. Defendant then moved to dismiss the second action, and that motion was denied by the trial judge. both sides then filed cross-motions for summary judgment. Plaintiffs' motion was granted, and defendant's was denied. After defendant's motion for a rehearing was denied, it appealed.

Defendant raises three points on review, whether: (1) the trial court's findings were against the manifest weight of the evidence; (2) the assignment judge erred when he refused to consolidate the declaratory judgment and forcible entry and detainer action; and (3) the trial court erred in refusing to dismiss plaintiffs' action under section 2—619(a)(3) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(3)).

The facts are not in dispute. Defendant operates a restaurant and bar known as Harry's Bar & Restaurant at 180 West Quincy Street in Chicago. Plaintiff La Salle National Bank, as trustee under a land trust agreement, is the legal title holder, and the property is managed by plaintiff U.S.C.C. Management Company.

Helry first took possession of the premises on April 1, 1976, under a five-year lease signed by Helry, LNB, and Miller Management Co. (hereinafter Miller), which was the managing agent at the time. Under the lease, defendant was to pay a specified sum plus 6% of gross sales over $30,000 as monthly rent. Defendant was also to provide, under section (b-5), a yearly certified statement of its sales. The lease also provided that defendant had the right to use a 7½ foot deep area at the back of the premises, designated as Area A, until March 31, 1978.

Because defendant had to perform extensive remodeling, it wanted to extend the lease another five years. On June 3, 1976, Miller sent defendant a letter that defendant relies upon to assert that the lease was extended; however, the parties later signed another five-year lease, which the trial court found to be controlling. Defendant also assumed that the alleged extension included its right to occupy Area A, which defendant continued to occupy past the March 31

deadline. Neither LNB nor Miller demanded that defendant vacate the area.

In addition, neither LNB nor Miller forced Helry to comply strictly with section (b-5) during the period of the first lease. The section states, in part:

> "(b-5) Annual Statements. On or before the fifteenth day of May 1978 and on or before the same day of each May during the remainder of the term, and also on or before the same day of May 1981 Lessee shall deliver to Lessor at the place last fixed for payment of rent a statement prepared and certified by an accountant licensed under the laws of the State of Illinois, showing Gross Sales during the year of the term ended on the last day of the last previous month. The accountant's certificate to the statement shall certify that he made a complete examination of the books, Federal income tax return or returns and cash register tapes of Lessee; that he compared the Gross Sales shown in the statement to the Illinois Retailer's Occupation tax and Use tax returns and that the statement is prepared in accordance with accepted accounting principles."

Defendant admits that its accountant, James Grieco, did not strictly comply with the requirements of section (b-5). Rather, Grieco submitted summaries of defendant's gross and net sales for the previous year. Helry did not keep its cash register tapes.

In early April 1981, Miller allegedly asked defendant to "waive" its right to the continued use of Area A. Bernard Miller, the president of Miller Management, denies that he ever made such a request. Nevertheless, defendant signed the "waiver," allegedly because it had been assured that it would never be used and was solely for Miller's protection.

On April 20, 1981, the new lease was signed. The base rent was increased but the percentage rent decreased. The lease's Rider D also provided that Area A would be part of the leased premises until April 30, 1982, when it would be excluded from the premises. Again, when the date arrived, defendant did not vacate Area A, and neither LNB nor Miller demanded that defendant vacate. The lease again provided that defendant furnish a certified financial statement.

Section 15(b) provides that any default of the tender of rent must be cured within five days after notice is given, and a default in the performance of any other provision must be cured within 20 days. Section 16 provides that a notice "shall be signed by or on behalf of Lessor."

In February 1982, the building that houses the restaurant was

sold, and USCC became the managing agent. On June 28, USCC sent defendant a notice that it would be excluded from Area A as of September 1, 1982; however, the notice continued, "In the event you intend to continue using this space then we can arrange a month-to-month lease of the excluded space at a rental of $300 monthly."

Helry continued to use Area A; it did not pay an additional $300 for September or October, although it paid for November through April. Defendant argues that the payments were "inadvertent" and that it did not intend to recognize plaintiffs' right to exclude Area A from the premises. Plaintiffs allege that defendant stopped payment of the additional $300 after January 1983.

Defendant alleges that it tried to negotiate a new lease but that negotiations broke down over disputes about utility bills. Thus, on March 31, 1983, USCC sent defendant a notice of default. USCC claimed that defendant was in default because: (1) it failed to surrender Area A; (2) it failed to provide a certified financial statement as provided by section (b-5); and (3) it improperly vented its kitchen equipment.

On April 11, defendant responded by denying the validity of the current lease and plaintiffs' right to occupy Area A. Defendant also asserted that the ventilation was a pre-existing condition. Lastly, defendant denied that it was required to send certified financial statements, but it referred the matter to its accountant. On April 21, USCC stated that the lease was terminated, and it began returning defendant's checks. On May 12, defendant sent a letter to USCC, which offered to surrender the air space above Area A to a neighboring restaurant if plaintiffs agreed to waive their other demands.

Plaintiffs responded by filing their first forcible entry and detainer suit on June 14, 1983, which plaintiffs later dropped. From July through October, plaintiffs sent defendant a series of notices concerning their alleged default. Defendant tendered a check for the June and July base rent and the percentage rent for April and May, which USCC accepted.

On September 2, 1983, USCC sent defendant a five-day notice, alleging that defendant owed some $12,000. Defendant tendered a check for $2,710, which USCC returned along with a termination of lease notice, demanding that defendant quit the premises within 60 days. Later that month, USCC demanded another $500 to cover the electric bill.

Defendant, on September 2, knew that it was going to be sued, so it took the initiative and filed a declaratory judgment action. Count I sought a declaration that defendant's rights were determined by the

original 1976 lease and to enjoin LNB from filing a forcible entry and detainer action. Count II sought a declaration that the second lease was void and to enjoin USCC from filing a forcible action. Count III sought to eject plaintiffs from Area B, which was then a cigar stand, and count IV sought an accounting for the disputed utility charges and demanded that USCC return an alleged overpayment for utility bills.

Plaintiffs, rather than filing an answer, filed a separate forcible entry and detainer action. It alleged: (1) defendant's nonpayment of rent; (2) its refusal to provide a certified statement as provided by section (b-5); (3) its failure to vacate Area A; and (4) its improper venting of the kitchen equipment.

Defendant moved to consolidate the actions, but its motion was denied by the assignment judge. Defendant then moved to dismiss plaintiffs' suit under section 2—619(3) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(3)). This motion was denied by the trial judge. Both parties then filed cross-motions for summary judgment, and the court denied defendant's motion but granted plaintiffs' motion.

In granting its judgment, the court found the following: (1) the second lease controlled, and the default notices served by plaintiffs were proper; (2) defendant had a duty to tender all of the rent that was due, and its failure to do so was a default; and (3) defendant's failure to provide a certified financial statement was also a default. The court did not rule, however, on the right to occupy Area A because a factual question existed. The court ordered a stay for 30 days, with defendant required to post a use and occupancy bond. The parties also reached an agreement for the payment of rent pending the resolution of the action. After defendant's motion for a rehearing was denied, it appealed.

I

■ Defendant's first point is that the trial court erred in granting plaintiffs' motion for summary judgment because the court's findings are against the manifest weight of the evidence. The standard for summary judgment is well settled. A judgment can be rendered "without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).) In determining whether a genuine factual issue exists, a court must strictly construe the evidence against the movant. *Kosten*

*v. St. Anne's Hospital* (1985), 132 Ill. App. 3d 1073, 1078, 478 N.E.2d 464.

In this case, the record shows that plaintiffs filed suit under section 9—102 of the forcible entry and detainer article of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 9—102). The section provides that one may maintain an action "[w]hen any lessee of the lands or tenements, or any person holding under such lessee, holds possession without right after the termination of the lease or tenancy by its own limitation, condition or terms, or by notice to quit or otherwise." Ill. Rev. Stat. 1983, ch. 110, par. 9—102(4).

■ Defendant first argues that the five-day notice was invalid because it was not signed by the lessor, the La Salle National Bank. Defendant cites paragraph 15(b) of the lease in support: "*** written demand by the *Lessor* that the default be cured, ***." (Emphasis added.) Defendant neglects to mention, however, the following paragraph, No. 16, which states, "All notices shall be signed by or on behalf of the Lessor." The notice is signed by the president of "U.S.C.C. Management Company/Landlord." Defendant cites *Feinberg v. Great Atlantic & Pacific Tea Co.* (1970), 131 Ill. App. 2d 1087, 266 N.E.2d 401, for the proposition that the parties to a land trust agreement must adhere to the formalities of the arrangement. *Feinberg*, however, concerned a beneficiary of a land trust who sued to recover damages for breach of a lease. The appellate court affirmed a judgment against the plaintiff-beneficiary because " 'the nature of the land trust is such that, if the trust is to be preserved, the powers of the beneficiary and the trustee must be kept distinct.' " (131 Ill. App. 2d 1087, 1089.) Thus, *Feinberg* is not dispositive here because the record shows that USCC is the agent of LNB, not a beneficiary, and the trial court was correct in ruling that the five-day notice complied with the lease.

■ ■ Defendant argues next that its failure to tender the entire amount of the rent that was due was not a breach because it tendered all of the rent that was not disputed. Conversely, plaintiffs argue that a failure to tender all the rent results in a forfeiture.

The court did not err in finding that defendant defaulted by not tendering the percentage rent because it is well settled that one must pay the entire rent that is due after a five-day notice has been given. (*Elizondo v. Medina* (1981), 100 Ill. App. 3d 718, 721, 427 N.E.2d 381, *appeal denied* (1982), 88 Ill. 2d 550.) Defendant admitted during its motion for rehearing that it did not tender the percentage rent, although its failure was "inadvertent." Defendant also argues that the court erred in finding that it breached the lease by its failure to

provide a certified financial statement. It argues that it could not provide the cash register tapes required for certification because the original management company, Miller, did not insist on strict compliance with section (b-5) of the lease. Defendant, however, does not cite any case law in support of its argument.

Plaintiffs cite section 17(b) of the lease, which provides:

"(b) No waiver of any default of lessee hereunder shall be implied from any omission by lessor to take any action on account of such default if such default persists or be repeated, and no express waiver shall affect any default other than the default specified in the express waiver and that only for the time and to the extent therein stated."

Besides the language of the lease, plaintiffs argue correctly that Illinois law provides that a lessor can insist on strict compliance at a future date even though it did not in the past. (*Barnard v. Hollingsworth* (1948), 336 Ill. App. 228, 231, 83 N.E. 372.) It is also true that a lessor must give sufficient notice of its changed intention to the lessee (*1616 Building Corp. v. Rubinson* (1965), 64 Ill. App. 2d 104, 110-11, 212 N.E.2d 333), which plaintiffs did. It is also undisputed that Harry Karzas admitted under oath that he told his accountant not to perform a certified audit.

■ Given the evidence, the trial court did not err in finding that defendant violated section (b-5) of the lease. The findings, that all the rent that was due was not tendered and that a certified financial statement was not provided, are supported by the evidence. Moreover, summary judgment was proper here because defendant conceded in his brief that it was able to raise the same issues in the forcible entry and detainer suit that it wanted to raise in its declaratory judgment action. During argument before this court, defendant reiterated that everything that it wanted to raise, including equitable arguments, was raised during the forcible entry and detainer action. Defendant does not argue that there are factual issues left to be resolved, only that the trial court came to the wrong conclusion. Upon reviewing the evidence, we conclude that the trial court's findings were not against the manifest weight of the evidence, and defendant's first point is overruled.

## II

■ Defendant's second point is that the assignment judge erred in refusing to consolidate the lawsuits. Consolidation is governed by section 2—1006 of the Code of Civil Procedure, which states: "An action may be severed, and actions in the same court may be consoli-

dated, as an aid to convenience, whenever it can be done without prejudice to a substantial right." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1006.) In Cook County, motions to consolidate cases that are pending in different departments are heard by the assignment judge. (Cook County Cir. Ct. Gen. Order 12.) Consolidation is proper when the cases "are [of] the same nature, arise from the same act or event, involve the same or like issues, and depend largely upon the same evidence." (*Robinson v. Robinson* (1981), 100 Ill. App. 3d 437, 449, 429 N.E.2d 183.) A court has discretion in choosing whether to consolidate. *People ex rel. Argo v. Henderson* (1981), 97 Ill. App. 3d 425, 428, 422 N.E.2d 1005.

In this case, the assignment judge abused his discretion in not consolidating the cases because the suits obviously arose from the same series of issues and depended largely on the same evidence. This case is similar to one decided by our supreme court, *Clore v. Fredman* (1974), 59 Ill. 2d 20, 319 N.E.2d 18.

In *Clore,* tenants sought declaratory and injunctive relief against their landlord, the city of Peoria, and Peoria's director of environmental protection agency to require the landlord to meet the minimum requirements of the city's housing code and to prevent their eviction. The landlord filed a forcible entry and detainer action and was awarded a summary judgment. The appellate court affirmed. *Fredman v. Clore* (1973), 13 Ill. App. 3d 903, 301 N.E.2d 7.

The supreme court reversed because there were factual issues that should have been resolved in trial. (*Clore v. Fredman* (1974), 59 Ill. 2d 20, 27-28.) the court also ordered that, on remand, the two actions be consolidated because the cases contained "common questions of law and fact, which could have and should have readily been determined at the same time." 59 Ill. 2d 20, 28.

In the instant case, then, the court erred in failing to consolidate the cases. The error, however, was harmless because, as we have seen, defendant has not shown any prejudice. It admits that all the issues were litigated in plaintiffs' forcible entry and detainer action.

### III

■ Defendant's final point is that its motion to dismiss under section 2—619 of the Code of Civil Procedure should have been granted. The statute reads in pertinent part:

> "(a) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds.
> * * *

(3) That there is another action pending between the same parties for the same cause." Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(3).

Defendant argues that the court's failure to dismiss was error. At the hearing on defendant's motion, the court inferred that the declaratory judgment action was actually an action to determine possession. The court then concluded that the two actions were not the same for the purposes of section 2—619 because two issues, defendant's failure to pay rent and its failure to tender a certified financial statement, were not raised in plaintiffs' complaint. The court, therefore, denied defendant's motion to dismiss plaintiffs' complaint.

In *Skolnick v. Martin* (1964), 32 Ill. 2d 55, 203 N.E.2d 428, *cert. denied* (1965), 381 U.S. 926, 14 L. Ed. 2d 684, 85 S. Ct. 1562, our supreme court held that the "same cause" requirement of section 48(1)(c) of the Civil Practice Act (now section 2—619(a)(3) of the Code of Civil Procedure) refers to actions arising out of the same transaction or occurrence. The court said, "The section refers to 'the same cause,' not the same 'cause of action,' and it has been held that actions are 'for the same cause,' when relief is requested on substantially the same state of facts." *Skolnick v. Martin* (1964), 32 Ill. 2d 55, 57. See also *People ex rel. Fahner v. Climatemp, Inc.* (1981), 101 Ill. App. 3d 1077, 1083, 428 N.E.2d 1096, *appeal denied* (1982), 91 Ill. 2d 556 (State of Illinois' antitrust action properly dismissed because State was also a named plaintiff in a Federal class action between the same parties and the same cause of action).

Under the *Skolnick* test, the court's failure to dismiss was error because the two suits arose from the same cause, the same state of facts. Although the actions may be couched in different terms and request superficially different remedies, there is no doubt that both parties were litigating the right to possession of the premises. The error, however, was harmless in this case because, as we have seen, everything that should have been presented to the court was presented in the forcible entry suit, and therefore defendant suffered no prejudice.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

PERLIN and HARTMAN, JJ., concur.