# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Reidy*, 2018 IL App (1st) 170054

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF ELLEN JORDAN REIDY, Petitioner-Appellee, and JOHN P. REIDY, Respondent-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-17-0054 |
| Filed | July 31, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-D-8084; the Hon. Debra B. Walker and the Hon. James P. Flannery, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Grund & Leavitt, P.C. (David I. Grund, David C. Adams, and Marvin J. Leavitt, of counsel), and Corri Fetman & Associates, Ltd. (Corri D. Fetman, of counsel), both of Chicago, for appellant.<br><br>Schiller DuCanto & Fleck LLP, of Chicago (Michele M. Jochner, Arnold B. Stein, and Thomas F. Villanti, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justices Pucinski and Walker concurred in the judgment and opinion. |

**OPINION**

¶ 1        This case arises out of the dissolution of petitioner-appellee Ellen Jordan Reidy and respondent-appellant John P. Reidy's 26-year marriage. Ellen filed a petition for dissolution in September 2013. Over two years later and after the dissolution petition had been set for trial, John filed a counterpetition for legal separation in the domestic relations division of the circuit court of Cook County along with a complaint in the law division against Ellen (among others) alleging that the defendants schemed to divest John of his interest in certain marital property by placing the property into two trusts. John's motion to consolidate his law division complaint into Ellen's dissolution petition was denied, as was his motion to stay the dissolution proceedings until the law division suit was resolved or, alternatively, to amend his counterpetition for legal separation to include his law division claims.

¶ 2        On appeal, John challenges the rulings on his motions to consolidate and to amend and also argues that the trial court erred in granting the petition for dissolution without apportioning the allegedly misappropriated marital property. John further argues that the trial court erred in crediting Ellen for amounts John incurred in attorney fees in excess of the fees Ellen incurred. Finding no error, we affirm.

¶ 3                                            BACKGROUND

¶ 4        John and Ellen were married in 1986 and had three adult emancipated children at the time Ellen petitioned for dissolution of their marriage on September 11, 2013. At the time the petition was filed, Ellen was 55 years old and John was 70. During their almost 30-year marriage, John was a public school teacher in Chicago, while Ellen founded American Food Technologies, Inc. (Amfotek), a manufacturer of sugar-based blended beverages for convenience stores and quick-service retailers. Ellen also formed Mariah Partners, LLC (Mariah Partners), the owner of a mixed-use office and industrial building in Tinley Park, Illinois, where Amfotek is headquartered.

¶ 5        On December 15, 2015, following over two years of discovery, the court set the matter for trial over several dates in July 2016 and ordered that discovery be closed on May 13, 2016. On February 26, 2016, John filed a counterpetition for legal separation. (As a Roman Catholic, John was opposed to divorce.) One week later, on March 4, 2016, John filed a complaint in the law division seeking millions of dollars in punitive and compensatory damages from Ellen and eight additional defendants. The complaint, in six causes of action, generally alleged a conspiracy between Ellen and the defendants to illegally transfer marital property into the John P. Reidy Qualified Personal Residence Trust (QPRT) and the Ellen J. Reidy Grantor Retained Annuity Trust (GRAT), both created in 2012, before Ellen filed her petition for dissolution. According to John, the creation of the trusts reduced the marital estate and ultimately would give him a smaller property distribution and maintenance award in the dissolution proceedings.

¶ 6        The corpus of the QPRT was a Naples, Florida, condominium that John and Ellen purchased in 2006. The buyer named on the deed and in the purchase documents was John P. Reidy, as trustee of the John P. Reidy Trust, Amended and Restated, January 26, 2006. According to John's complaint, the QPRT stripped him of ownership of the condo and left him with a 10-year life estate at the age of 69. Upon expiration of the 10-year term, the property would pass to Ellen and their three children. The final draft of the QPRT, which John alleged he was "tricked" into signing in December 2012, also contained a provision that Ellen would

remain a beneficiary of the trust in the event she and John divorced. The GRAT contained 30% of Ellen's interest in Amfotek and 39% of her interest in Mariah Partners. John alleged that he first learned of the existence of the GRAT during discovery in the dissolution proceedings.

¶ 7     On April 13, 2016, the court granted John's petition for interim and prospective attorney fees and costs, ordering Ellen to pay John's past due and prospective attorney fees until further order. The court's order also provided that all such payments would be deemed advances from the marital estate. Finally, the court concluded that the assessment of the interim fee award was "without prejudice to any final allocation and without prejudice to any claim or right of either party or counsel."

¶ 8     On April 28, 2016, less than two months before trial was set to begin, John filed a motion to consolidate his law division complaint into the petition for dissolution, arguing that consolidation would further judicial economy and avoid possibly conflicting results. According to John, he filed the motion to consolidate in both the law division and the domestic relations division of the circuit court, but the notice of motion appears only in the electronic docket of the law division case, not the docket in the dissolution case pending in the domestic relations division. The motion itself only bears the stamp of the law division.

¶ 9     Pursuant to Cook County Circuit Court General Order No. 12.1, the motion was heard by the law division's assignment judge, who hears motions for consolidation pending in different divisions of the trial court. Cook County Cir. Ct. G.O. 12.1 (Feb. 1, 1964). Ellen and several codefendants in the law division case opposed the motion on the basis that they would be prejudiced by the addition of new claims in the dissolution proceedings and the attendant delay that would follow in a case that had already been pending for 2½ years. The court agreed and denied John's motion on June 23, 2016. The order denying the motion for consolidation, while including the caption for the domestic relations case, appears only in the electronic docket of the law division case.

¶ 10    The next day, on June 24, 2016, John changed his strategy and filed a motion in the domestic relations division to stay the dissolution proceedings pending resolution of the law division complaint or, alternatively, for leave to amend his counterpetition for legal separation to add the claims asserted in his law division complaint. Again, John cited reasons of judicial economy and the prevention of conflicting results as the basis for his motion, while Ellen argued she would be prejudiced by a delay in the dissolution proceedings. The court denied John's motion, finding that John could have sought leave to amend his counterpetition earlier and that Ellen was entitled to dissolution of their marriage without further delay.

¶ 11    Ellen also filed a motion *in limine* asking the court to bar John from introducing allegations contained in the law division complaint at trial. John, through counsel, joined in that motion and asked for an agreed order that prohibited both parties from eliciting evidence or testimony relating to the law division claims. The court ultimately granted the motion *in limine*.

¶ 12    Trial took place on July 11-14 and July 18, 2016, with much of the evidence presented via stipulation. John and Ellen were the only witnesses to testify.

¶ 13    In August 2016, while the matter was under advisement, Ellen challenged $400,000 in interim fees sought by John and filed a motion to reopen proofs to require John to explain the basis for his $400,000 fee request. The motion further asked the court to hold a hearing on the reasonableness of those fees prior to making a final allocation. The court denied Ellen's motion on September 27, 2016, but ordered the parties to submit affidavits attesting to the amount of

fees and costs they had incurred. The affidavits reflected that as of September 30, 2016, Ellen had paid fees and costs of $728,901, while John had paid $1,357,708.

¶ 14 The court ultimately granted the petition for dissolution on December 20, 2016. Per the agreed motion *in limine*, the court's order did not allocate or refer to the property in the QPRT and GRAT but allocated the parties' business interests (primarily consisting of 70% of Amfotek and 61% of Mariah Partners) and awarded John 45% and Ellen 55%. With regard to attorney fees, the court ordered that the amount John paid in fees in excess of the amount Ellen paid "shall be used as a credit in the calculation of the note owed from Ellen to John as part of the buy-out of the business interests." The court did not award either party contribution for outstanding fees, as it found that each party had sufficient assets to pay their own fees.

¶ 15 John timely appealed on January 5, 2017. Before briefing commenced, in March 2017, Brigid Reidy and Maura Baskovich, defendants in the law division case in their capacity as trustees of the QPRT and GRAT, respectively, moved to intervene and filed a motion to dismiss a portion of the appeal. This court allowed their motion to intervene, but on October 2, 2017, the circuit court dismissed John's law division complaint against Brigid and Maura. On November 30, 2017, after John had filed his appellant's brief, Brigid and Maura moved to withdraw their intervention and their motion, which we allowed. They are no longer parties to this appeal.

¶ 16 ANALYSIS

¶ 17 At the outset, we address both parties' contention that the other's brief violated Illinois Supreme Court Rule 341 (eff. Nov. 1, 2017), which governs the content of appellate briefs. Specifically, Ellen contends that John's opening brief omitted facts that were unfavorable to him in violation of Rule 341(h)(6) and that John failed to cite the record throughout his argument in violation of Rule 341(h)(7). See *id.* John, in turn, argues that Ellen's brief failed to conform to Rule 341(h)(6) by injecting argument into the statement of facts. See *id.*

¶ 18 Notably, the rules of procedure governing appellate briefs are rules rather than suggestions. *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 18. In other words, failure to comply with supreme court rules is not an inconsequential matter, and we may strike a brief that fails to substantially conform to the pertinent rules. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. But where violations of the rules do not hinder our review, we may simply disregard the noncompliant material. *Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 8. This is the case here.

¶ 19 We agree that John's brief omits some salient facts, most importantly, the fact that the dissolution case had been set for trial at the time John filed his counterpetition for legal separation and law division complaint. Likewise, Ellen's statement of facts veers closely into argument on occasion. But neither of these violations impair our review, and we decline to accept either parties' invitation to strike the other's brief.

¶ 20 As a final procedural matter, we address John's contention that Ellen cited a document included in the appendix that was not made part of the record. Specifically, in explaining the process that led to Brigid and Maura's motion to withdraw intervention in this appeal, Ellen cited the circuit court's order dismissing them from the law division case. While a party may not rely on matters outside the record to support its position on appeal (*Keener v. City of Herrin*, 235 Ill. 2d 338, 346 (2009)), this order *was* in fact included in the supplemental record Brigid and Maura filed simultaneously with their motion to withdraw. In any event, given that

the trial court's dismissal order as to Brigid and Maura has no relevance to the issues in the instant appeal, we will not consider it.

¶ 21      Turning to the merits, we begin by addressing John's challenge to the trial court's order denying his motion to consolidate his law division complaint into the dissolution petition pending in the domestic relations division. Ellen argues that we lack jurisdiction over an appeal from this order, and we agree.

¶ 22      This court has jurisdiction over appeals from all final judgments entered in the circuit court, as well as those "prior nonfinal rulings and final but nonappealable orders that produced the judgment." *In re Marriage of King*, 336 Ill. App. 3d 83, 86 (2002). Neither party contends that the order denying consolidation was a final judgment, but John argues that it was an underlying nonfinal order in the judgment of dissolution. We disagree: the denial of the motion was a step in the procedural progression of the *law division* case, in which the trial court has not yet rendered a final judgment, and which is not on appeal.

¶ 23      John correctly notes that pursuant to circuit court rule, he was required to file his motion to consolidate in the law division, given that the motion asked to consolidate two cases pending in different divisions of the circuit court. See Cook County Cir. Ct. G.O. 12.1 (Feb. 1, 1964); see also *La Salle National Bank v. Helry Corp.*, 136 Ill. App. 3d 897, 905 (1985). But the fact that the motion itself (and the order denying it) was filed and entered only in the law division case is not the basis for our holding. The *substance* of the motion pertained only to the law division case. John asked the court to transfer his law division complaint from the law division to the domestic relations division and consolidate his law division action into the dissolution proceedings. The motion sought relief pertaining only to John's law division claims; John wanted to litigate those claims in a different division of the circuit court. Because the motion did not seek relief with respect to the dissolution proceedings, we conclude that we lack jurisdiction over the order denying the motion to consolidate in this appeal from the dissolution judgment.

¶ 24      But even assuming we could characterize the denial of the motion to consolidate as a procedural step in the dissolution case, we find no error in the court's decision. A motion to consolidate should be allowed as an "aid to convenience" if it can be done "without prejudice to a substantial right." 735 ILCS 5/2-1006 (West 2014). Consolidation is proper when the cases involve almost identical issues and the failure to consolidate could result in inconsistent judgments. *Charles v. Gore*, 248 Ill. App. 3d 441, 446-47 (1993). The trial court has broad discretion in deciding whether to grant a motion to consolidate, and we will not disturb the trial court's determination absent an abuse of that discretion. *Turner v. Williams*, 326 Ill. App. 3d 541, 546 (2001).

¶ 25      Here, the court did not abuse its discretion in denying John's motion on the basis that Ellen and the defendants would face prejudice if the motion was granted. The court noted that consolidation would require a substantial continuance to allow the parties to complete discovery, as it added eight new defendants and pled six causes of action. Given that the dissolution proceeding had been pending for over 2½ years and was set for trial in less than two months, the untimeliness of the motion was not an unreasonable basis for the trial court's decision to deny consolidation. See *Peck v. Peck*, 16 Ill. 2d 268, 275 (1959) (application for consolidation must be timely).

¶ 26    John also challenges the trial court's refusal to allow him to amend his counterpetition in the dissolution proceedings to include his newly filed law division claims.[1] Although we do have jurisdiction to consider this claimed error, we reject it largely for the same reasons articulated above. We review a denial of leave to amend a pleading for an abuse of discretion. *Johnson v. Stojan Law Office, P.C.*, 2018 IL App (3d) 170003, ¶ 18. A trial court abuses its discretion only when no reasonable person would take the view adopted by the trial court. *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 801 (2002). The court did not abuse its discretion in denying John's motion to amend his counterpetition for legal separation to add new claims asserted in the law division complaint. See *Taylor, Bean, & Whitaker Mortgage Corp. v. Cocroft*, 2018 IL App (1st) 170969, ¶ 46 ("The trial court has broad discretion in deciding a motion to amend pleadings prior to the entry of final judgment."). The four factors we consider in determining whether the court abused its discretion in denying leave to amend are (1) whether the proposed amendment would cure a defect in the pleading, (2) whether other parties would sustain prejudice or surprise by virtue of the amendment, (3) whether the amendment is timely, and (4) whether we can identify previous opportunities to amend the pleading. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 27    Here, Ellen would certainly have been prejudiced had John been permitted to add six new causes of action to his petition at the end of June 2016, as it would have delayed the dissolution proceedings, scheduled for trial in early July, for an indeterminate amount of time. And John failed to take advantage of opportunities to amend his pleading given that he became aware of the GRAT and its contents, on which his fraud claims were based, during discovery in the dissolution proceedings, which had been ongoing for over two years. In addition, John knew of the existence of the QPRT when he executed it in 2012, although he alleges that he did not read the provision retaining Ellen as the beneficiary of the trust in the event of divorce. At the latest, when John initially filed his counterpetition in February 2016, he was aware of all his claims arising out of the GRAT and QPRT. This is evidenced by the fact that he filed a complaint raising those claims in the law division less than one week after filing his counterpetition. The court's order denying John's motion to amend his counterpetition, which took into consideration these factors, was thus well within its discretion. See *Hartzog v. Martinez*, 372 Ill. App. 3d 515, 526 (2007) (holding trial court's denial of plaintiffs' motion to amend pleading was within court's discretion where plaintiffs had sufficient previous opportunity to amend).

¶ 28    John next argues that the trial court's dissolution judgment was "incomplete" and "unsalvageable," and conflicted "with the mandates of the [Illinois Marriage and Dissolution of Marriage Act]." Specifically, John argues that the court erred in failing to classify the corpus of the QPRT and GRAT as marital or nonmarital property and apportion it accordingly in the judgment of dissolution. We agree with Ellen that John acquiesced in the omission of the classification and valuation of the QPRT and GRAT in the dissolution judgment and is estopped from arguing the contrary position on appeal.

¶ 29    It is well-settled that a party cannot request to proceed in one manner at trial and then argue on appeal that the requested action was error. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 33; see also *In re Stephen K.*, 373 Ill. App. 3d 7, 25

---

[1]On appeal, John does not challenge the trial court's denial of his motion to stay the dissolution proceedings while the law division complaint was pending.

- 6 -

(2007) ("A party is estopped from taking a position on appeal that is inconsistent with a position the party took in the trial court."). Stated differently, a party cannot complain of an error that he either induced the court to make or to which he consented. *Brax v. Kennedy*, 363 Ill. App. 3d 343, 350 (2005). The purpose of this rule is that it would be "manifestly unfair" to afford relief to a party based on an error the party introduced into the proceedings. *Pellico v. Mork*, 2018 IL App (2d) 170468, ¶ 20 (citing *Gaffney*, 2012 IL 110012, ¶ 33).

¶ 30    As noted, Ellen moved *in limine* to bar the allegations contained in John's law division complaint at trial. These allegations concerned the formation of the QPRT (containing the Naples condominium) and the GRAT (containing 30% and 39% of Ellen's interest in Amfotek and Mariah Partners, respectively), which John contended was part of a conspiracy to "divest and defeat" his interest in the property. John's response to Ellen's motion asked the court to enter an order "prohibiting the parties from introducing evidence concerning the issues, facts or underlying subjects raised, all without prejudice, to and in the pending Law Division action."

¶ 31    At the hearing on the motion *in limine*, Ellen clarified that she was moving to bar "testimony or evidence" relating to the causes of action in John's complaint. Counsel for John responded, "I will join in that." The parties then disputed whether the court could value the income Ellen was currently receiving from her interest in the GRAT: John argued that the court should not value this income, as it was nonmarital property, while Ellen contended that because she received the income stream during the marriage, it constituted marital property. The court agreed with Ellen, but held that it would not admit "evidence pertaining to the underlying value of the GRAT and QPRT," to which John's counsel responded "Wonderful." The written order granting the motion closely tracked the language of John's proposed order, stating that the parties were prohibited from "introducing evidence concerning the issues and facts raised, all without prejudice, to and in the pending Law Division action ***. This Court shall not adjudicate the claims or issues now pending in [the] Law Division action."

¶ 32    The transcript and written motion make clear that John, just as Ellen, did not want the court to consider the QPRT and the GRAT in its dissolution judgment. Having induced the trial court to omit these trusts from consideration, John has waived any claim that this omission was erroneous. *Forest Preserve District v. First National Bank of Franklin Park*, 2011 IL 110759, ¶ 27 ("A party may not urge a trial court to follow a course of action, and then, on appeal, be heard to argue that doing so constituted reversible error.").

¶ 33    The remainder of John's challenges to the dissolution judgment suffer from the same problem. John argues that it was error to discount the value of Ellen's interest in Amfotek and Mariah Partners based on the fact that she owned less than 100% of those assets, but his own expert applied the 15% lack-of-marketability discount that he challenges on appeal.

¶ 34    John also contends that the court erred in awarding him $693,315 in two life insurance accounts held by the Ellen J. Reidy Irrevocable Trust and the Ellen J. Reidy Irrevocable Trust II, as those accounts are not the property of either party, but the property of the trusts, and as such, John lacks the ability to realize the cash value of the policies. But this argument, too, is waived based on the fact that John's own proposed judgment order characterized these accounts as marital property and awarded them to him. During oral argument, John explained that he believed the accounts to be marital property based on Ellen's representation in her proposed judgment order. (No evidence regarding the life insurance policies was introduced at trial.) But Ellen did not conceal the fact that these life insurance policies were held in trusts;

she indicated as much in her proposed order. We can hardly fault the trial court for entering an order that conformed to the parties' representation that the life insurance policies, though held in trust, were marital property. And a litigant seeking relief on appeal has no chance of success when the claimed error arises from the litigant's conduct in adopting, without question, an adversary's classification of marital property.

¶ 35    John's final argument with respect to the dissolution judgment is that the court, despite listing Ellen's income stream from the GRAT as an "other asset[ ]," failed to value or allocate it to either party in violation of the Illinois Marriage and Dissolution of Marriage Act (Act) 750 ILCS 5/101 *et seq.* (West 2014). Again, the record reflects that John vociferously objected to the valuation of this income, characterizing it as nonmarital property. While the court overruled that objection, neither party introduced evidence of the income Ellen had been receiving from the GRAT, and as such, the court could not ascribe value to it.

¶ 36    Finally, we address John's claim that the court erred in crediting Ellen for John's attorney fees in excess of her own without holding a hearing on contribution in accordance with section 503(j) of the Act. *Id.* § 503(j). The parties' dispute centers around whether a final allocation of interim attorney fees is equivalent to an award of contribution that must meet the petition and hearing requirements of section 503(j) of the Act. This presents an issue of statutory interpretation, which we review *de novo. People ex rel. Madigan v. Kinzer*, 232 Ill. 2d 179, 184 (2009).

¶ 37    At the outset, we note that section 508 of the Act, governing attorney fees, makes clear that interim attorney fees and petitions for contribution are distinct, in that interim fees are governed by subsection (c-1) of section 501 of the Act, while an award of contribution must be in accordance with subsection (j) of section 503 of the Act. See 750 ILCS 5/508(a) (West 2014).

¶ 38    Section 501(c-1) provides that the court may award interim attorney fees while a case is pending in favor of the petitioning party's counsel for those fees and costs already incurred or to be incurred. *Id.* § 501(c-1). Subsection (1) of section 501(c-1) sets out the procedures for a hearing on a petition for interim fees, while subsection (2) reads as follows:

> "Any assessment of an interim award (including one pursuant to an agreed order) shall be without prejudice to any final allocation and without prejudice as to any claim or right of either party or any counsel of record at the time of the award. Any such claim or right may be presented by the appropriate party or counsel at a hearing on contribution under subsection (j) of Section 503 or a hearing on counsel's fees under subsection (c) of Section 508. *Unless otherwise ordered* by the court at the final hearing between the parties or in a hearing under subsection (j) of Section 503 or subsection (c) of Section 508, *interim awards*, as well as the aggregate of all other payments by each party to counsel and related payments to third parties, *shall be deemed to have been advances from the parties' marital estate*." (Emphases added.) *Id.* § 501(c-1)(2).

¶ 39    John reads subsection (2) to mean that a final allocation of attorney fees is part of a claim for contribution and is governed by section 503(j), which requires a timely petition and a hearing before contribution is awarded. Not so.

¶ 40    The statutory language makes clear that at some point before final allocation, a party may assert a "claim or right" to fees and costs, including a claim for contribution. But that is not what happened here. Rather, Ellen sought a hearing regarding the reasonableness of certain interim fees John was requesting pursuant to the April 13, 2016, order. Instead of holding a

hearing, the court accepted evidence via affidavit to "true-up" the parties' accounts. This was not in error. See *In re Marriage of Altman*, 2016 IL App (1st) 143076, ¶ 36 (interim fees deemed advances from the marital estate and court can order portion of interim award constituting overpayment to be repaid at end of case (citing *In re Marriage of DeLarco*, 313 Ill. App. 3d 107, 113 (2000))). The court properly credited Ellen for $628,807, constituting the amount of fees and costs John paid in excess of Ellen's.

¶ 41          Affirmed.