# ILLINOIS OFFICIAL REPORTS

## Supreme Court

***Forest Preserve District v. First National Bank of Franklin Park*, 2011 IL 110759**

| | |
|---|---|
| Caption in Supreme Court: | THE FOREST PRESERVE DISTRICT OF Du PAGE COUNTY, Appellant, v. FIRST NATIONAL BANK OF FRANKLIN PARK *et al.*, Appellees (The State of Illinois *ex rel.* Lisa Madigan, Intervenor-Appellant). |
| Docket Nos. | 110759, 110760 cons. |
| Filed | December 1, 2011 |
| Rehearing denied | January 23, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A condemnation action which, pursuant to statute, evaluated the property in 2007 as of the complaint's 1999 filing date was remanded to determine if there had been a value increase, and if so, for a jury trial as to current fair market value–fifth amendment. |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Du Page County, the Hon. Stephen J. Culliton, Judge, presiding. |
| Judgment | Appellate court judgment affirmed; cause remanded. |

Counsel on
Appeal

Scott M. Day and Rachel K. Robert, of Day & Robert, of Naperville (Robert G. Black, of counsel), for appellant.

Lisa Madigan, Attorney General, of Springfield (Jane Elinor Notz, Deputy Solicitor General, and Richard S. Huszagh, Assistant Attorney General, of Chicago, of counsel), for intervenor-appellant.

James M. Wagner, Mary Elizabeth Damitio and Patrick J. Kelly, of Helm & Wagner, of Naperville, for appellees.

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff, the Forest Preserve District of Du Page County (the District), filed a condemnation action against defendants on December 21, 1999. At that time, section 7-121 of the Eminent Domain Act provided that the date of filing the complaint was to be considered the valuation date for purposes of determining just compensation. See 735 ILCS 5/7-121 (West 1998). At a trial held December 12, 2007, nearly eight years after the case was filed, a jury determined that the fair market value of the property on December 21, 1999, was $10.725 million. The circuit court entered judgment on the jury's award for that amount. The appellate court affirmed in part, but vacated the jury's verdict as to the value of the property and remanded for further proceedings to determine if the current value of the property is materially different from the amount of the jury's verdict so that it could be said that the verdict does not reflect just compensation as of the actual date of taking. 401 Ill. App. 3d 966, 1005-06.

¶ 2    Before this court, the parties raise the following questions: (1) whether the date of "taking" is considered the date of valuation listed by statute or instead the date that a plaintiff is given title and the right to possess the property; (2) whether the fifth amendment as interpreted by the United States Supreme Court in *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1 (1984), requires a remand under the circumstances of the present case to determine if the value of the property has materially changed despite the traditional date-of-filing rule of valuation applied in Illinois; (3) whether defendants forfeited their right to argue that they were denied just compensation where they did not file a "speedy trial demand" at the outset of the litigation and a significant delay subsequently ensued between the time of the filing of the complaint and the condemnation trial; (4) whether defendants forfeited their right to claim a lack of just compensation in reliance upon *Kirby* by failing to argue prior to

trial that the jury should be instructed to base its assessment on a more current date of valuation; (5) whether the appellate court erred in ruling that the District could abandon the condemnation case on remand if it chose; and (6) whether the District failed to negotiate in good faith prior to filing its condemnation complaint.

¶ 3                                                    BACKGROUND

¶ 4         The facts in this case were thoroughly set forth by the appellate court in its opinion below. We summarize only those facts necessary for the resolution of the issues before us. In 1978, Naper Venture, in which defendant Robert Krilich held a dominant interest, applied for the annexation into Naperville of a 456-acre planned unit development (PUD) to be called Country Lakes. The PUD was approved as a special use in connection with the annexation agreement. The PUD contained an existing 150-acre public golf course. Around the golf course were seven areas that were to be developed as residential areas of varying density. Area 1 was already developed at the time of the annexation agreement. By December 1999, areas 2 through 5 had been developed or were in the process of being developed. Areas 6 and 7, which consisted of approximately 54 total acres, had not been developed, and the Summit Development Corporation had a contract pending to purchase these areas (the Summit parcel) for development.

¶ 5         In November 1999, the District decided to acquire the 204 acres comprising the golf course and the Summit parcel. On November 23, 1999, the District's board of commissioners approved an ordinance authorizing the District to negotiate acquisition of the property. The District then sent letters to the two trusts it determined owned the property, offering the trustees a total of $9.27 million and giving them 10 business days to respond before pursuing condemnation proceedings. After a meeting between the two sides, the owners, including Krilich, who was the majority beneficiary under both trusts, rejected the District's offer, but did not make a counteroffer.

¶ 6         The District's board of commissioners then met on December 7, 1999, and considered the negotiations for the property. Noting that neither side had made any further offers or counteroffers since the offer letters on November 23, 1999, the board of commissioners adopted an ordinance finding an inability to agree, revoking authority to negotiate further, and authorizing condemnation of the property. The District sent letters to the two trustees and Summit Development Corporation, enclosing a copy of the December 7 ordinance.

¶ 7         On December 21, 1999, the District filed a complaint to condemn the property. At the time the complaint was filed, there was a dispute over ownership of the property and separate litigation was being conducted to determine ownership. Proceedings in this case were stayed until October 2001 when the ownership suit was resolved. A further delay ensued when Krilich and Edward White disputed among themselves about who had a right to control the defense in the condemnation action. That dispute was finally resolved in Krilich's favor in November 2004.

¶ 8         Once the issues of ownership and control of the litigation were settled, defendants filed a second amended traverse and a motion to dismiss on March 28, 2005, arguing that the trial court lacked jurisdiction and that the condemnation complaint should be dismissed for

several reasons. The parties conducted discovery on the issues raised in the traverse. In September 2006, the District filed several motions for partial summary judgment relative to the second amended traverse. One of those motions concerned whether the District had engaged in good-faith negotiations prior to the filing of the condemnation complaint. On December 4, 2006, the trial court granted the District's motions for partial summary judgment, and on January 9, 2007, the court denied defendant's second amended traverse and motion to dismiss.

¶ 9        The case then proceeded through case management and discovery. Several months prior to trial, on August 3, 2007, defendants filed a motion asking the trial court to schedule a posttrial evidentiary hearing under *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1 (1984). The motion alleged that the area in which the property is located had substantially increased in value in the period that had elapsed from the date the condemnation complaint was filed in 1999. In order to afford defendants their constitutional right to just compensation, a posttrial hearing under *Kirby* would be required, they argued, to determine whether the value of the subject property had materially changed from 1999 until the time that the amount of the condemnation award is eventually placed on deposit by the District sometime after trial.

¶ 10       The trial court heard oral argument on the *Kirby* motion on November 13, 2007. Defendants' counsel argued that Illinois has a "system in place that does not allow for just compensation." Counsel explained that the statute requires valuation as of the date of filing, but the constitution provides that just compensation be measured as of the date of the taking, which is the date that the government chooses to deposit the amount of the jury award. Counsel argued that *Kirby* provides a remedy for the problem by allowing for a posttrial hearing to modify the value awarded if a substantial delay has caused a material change in the value of the land.

¶ 11       At the conclusion of the hearing, the trial court denied the motion for a *Kirby* hearing without taking it under advisement. From the court's comments and questioning of counsel, it is clear that the court believed that *Kirby* should not be applied to Illinois law where there was no wrongful delay caused by the governmental entity seeking condemnation.

¶ 12       The case was thereafter tried by a jury on December 12, 2007. The jury determined that the fair market value of the property on December 21, 1999 (the date the condemnation complaint was filed), was $10.725 million. On December 19, 2007, the trial court entered judgment on the jury award. However, the trial court did not grant the District the right to take title and possession of the property. Instead, it only allowed the District to deposit the amount of the jury award with the Du Page County treasurer in order to toll the statutory interest due on the award that would accrue from the date of the jury award to the date the payment was placed on deposit. See 735 ILCS 5/7-108 (West 1998). Noting that "defendants intend to file various post-trial and appellate court pleadings, inclusive of a motion to stay the judgment pending appeal," it found that the District could not take immediate possession of the property and that the vesting of title would have to await a future order of the court. On December 20, 2007, the district paid the judgment and interest to the county treasurer, and those funds have remained on deposit earning interest to defendants since that date.

¶ 13    Defendants subsequently filed a posttrial motion, which again raised the constitutional argument that the just compensation clause of the fifth amendment as interpreted in *Kirby* required the trial court to hold a hearing to determine the appropriate adjustment to the jury verdict to accommodate for the increase in value from the valuation date of December 19, 1999, to the date of the deposit of the condemnation award on December 20, 2007. In support of their motion, defendants attached as an exhibit an appraisal stating that, as of December 20, 2007, the property was worth a minimum of $25.5 million. The trial court denied defendants' posttrial motion on May 22, 2008. However, nothing in the record indicates that the trial court ever ruled that the District could take title and possession to the property, nor did the court rescind its previous order stating that transfer of title and possession would have to wait for a future order of the court.

¶ 14    Defendants timely appealed to the appellate court, arguing that the trial court erred in denying their posttrial motion for a *Kirby* hearing. They also argued, *inter alia*, that the trial court erred in granting the District summary judgment on the issue of whether the District engaged in good-faith negotiations prior to filing the condemnation complaint.

¶ 15    The appellate court noted that defendants' appeal of the *Kirby* issue raised the following additional issues:

> "First, what measure of compensation for the taking of property constitutes 'just compensation' under the fifth amendment? Second, were the defendants denied just compensation in this case? Third, if the defendants were denied just compensation, was this the result of their own choices or actions such that the denial does not offend the constitution? In addition, we asked the parties to submit supplemental briefs on two other issues: are the recent amendments to the Act applicable in this case, and, if they are not, is the old version of the statute constitutional as applied?" 401 Ill. App. 3d at 980-81.

After the appellate court ordered supplemental briefing, defendants served notice on the Attorney General that they were challenging the constitutionality of section 7-121 of the Act as applied. The Attorney General was then granted leave to intervene in the appeal and thereafter filed a brief addressing the supplemental issues.

¶ 16    The appellate court's decision first addressed the issue of good-faith negotiations and concluded that the trial court did not err in granting summary judgment in the District's favor on that issue. 401 Ill. App. 3d at 976. With respect to the *Kirby* issue, the court held that a hearing was required to determine whether "application of section 7-121 did not provide just compensation in this case." See 401 Ill. App. 3d at 1004. The appellate court vacated the jury's verdict as to the value of the property, subject to a possible reinstatement by the trial court following a hearing on just compensation on remand. 401 Ill. App. 3d at 1006. It found that the District remained free to abandon the condemnation proceeding and withdraw its deposit because the date of taking had not yet occurred. 401 Ill. App. 3d at 1005. It further found that in setting the valuation date to be used in determining just compensation on remand, the date of any new trial, rather than the December 20, 2007, date of deposit, will more closely approximate the date of taking. 401 Ill. App. 3d at 1005.

¶ 17    In resolving the *Kirby* issue and those related to it, the appellate court began its analysis

by discussing the development of the Illinois rule that the date of the filing of the condemnation complaint be used for measuring just compensation. The origins of the rule can be traced to *South Park Commissioners v. Dunlevy*, 91 Ill. 49, 53 (1878), and it was "firmly established" by the time of this court's 1907 decision in *Sanitary District of Chicago v. Chapin*, 226 Ill. 499, 503 (1907). This court last addressed the rule in *Trustees of Schools of Township No. 37 v. First National Bank of Blue Island*, 49 Ill. 2d 408, 411 (1971), one year before the rule was codified in 1972 (Ill. Rev. Stat. 1973, ch. 47, ¶ 9.7).

¶ 18 The appellate court then noted that *Blue Island* relied upon *Chapin* and *Winkelman v. City of Chicago*, 213 Ill. 360, 364 (1904), as support for the rule that the property taken must be valued as of the date of filing unless the government is at fault in causing substantial delay, during which time the value of the land rises substantially. It is only when the government is wholly at fault that the landowner could obtain relief by either seeking damages or moving to dismiss the suit so that the government would have to refile if it still wanted the property, thereby establishing a new valuation date. See 401 Ill. App. 3d at 984-85 (citing *Blue Island*, 49 Ill. 2d at 411). The appellate court also noted that *Blue Island* suggested that the landowner might have been able to obtain just compensation that included the four years of delay in the case if he had made a request for a "speedy trial." But the appellate court noted that it was unclear what the phrase "speedy trial" request referred to in the context of a condemnation case. 401 Ill. App. 3d at 996.

¶ 19 The appellate court then found that the fifth amendment, as interpreted in *Kirby*, required modification of the "fault-based exception" set forth in *Blue Island*. See 401 Ill. App. 3d at 987. In addressing when a taking occurs, *Kirby* held that "because the federal government retains its right to decide not to acquire land even after a trial setting the amount of just compensation, the 'date of taking' is the date on which the government actually pays the owner and takes title to the land." 401 Ill. App. 3d at 986 (citing *Kirby*, 467 U.S. at 12). *Kirby* further held that " '*[h]owever reasonable it may be to designate the date of trial as the date of valuation, if the result of that approach is to provide the owner substantially less than the fair market value of his property on the date the [government] tenders payment, it violates the Fifth Amendment*.' " (Emphasis added.) 401 Ill. App. 3d at 987 (quoting *Kirby*, 467 U.S. at 17).

¶ 20 The appellate court concluded that under Illinois law a taking also does not occur until the date the condemning authority tenders payment for the land and gains the right to title and possession. See 401 Ill. App. 3d at 990. It then rejected the claim that *Kirby* does not apply to Illinois condemnation law. It found that the fifth amendment to the United States Constitution applies to the states through the due process clause of the fourteenth amendment and requires not only that the process for setting just compensation afford the landowner due process, but also that the result of the process actually yield just compensation. 401 Ill. App. 3d at 988-89 (citing *Chicago, Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226, 241 (1897)).

¶ 21 The appellate court then found that the remedies provided by *Blue Island* for correcting for long delays were "not sufficiently '[reasonable,] certain and adequate' " under the United States Supreme Court's decision in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985), to serve as a viable alternative

method for seeking just compensation. 401 Ill. App. 3d at 997. Finally, it noted that equitable considerations may play a part in setting just compensation. 401 Ill. App. 3d at 997. But because there was no indication that defendants engaged in any intentional or deliberate dilatory conduct or frivolous legal tactics, the delay in this case due to defendants mounting a vigorous defense could not be a basis to deny them just compensation, especially where such "a 'sanction' *** in this case, might be equal to more than half of the current value of their property." 401 Ill. App. 3d at 998.

¶ 22     Both the District and the Attorney General filed petitions for leave to appeal to this court, raising several issues. This court allowed both petitions and consolidated them for review. Additionally, defendants raise two arguments in their cross-appeal.

¶ 23                                ANALYSIS

¶ 24     The issues presented in this appeal raise purely legal questions without any factual disputes. We will therefore conduct *de novo* review of the issues presented. See, *e.g.*, *People v. Brown*, 225 Ill. 2d 188, 198 (2007).

¶ 25                    I. No Forfeiture or Invited Error

¶ 26     We first address the Attorney General's argument that defendants forfeited their right to have just compensation valued using any point in time other than the date of the filing of the condemnation action. In particular, the Attorney General argues that defendants invited error by (1) asserting to the circuit court that the valuation date should be the date of the filing of the condemnation action in accordance with section 7-121 of the Act and (2) agreeing to jury instructions based on that section, and (3) only arguing for the first time on appeal that the statute was unconstitutional as applied.

¶ 27     In support of her argument, the Attorney General relies on the following general principles. A party may not urge a trial court to follow a course of action, and then, on appeal, be heard to argue that doing so constituted reversible error. *In re Detention of Swope*, 213 Ill. 2d 210, 217-18 (2004). A party cannot seek reversal of a judgment entered on a jury verdict based on an argument that the instruction was improper where that party tendered or agreed to the instruction. *J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.*, 108 Ill. 2d 106, 116 (1985). A party's failure to challenge the constitutionality of a statute in the circuit court normally forfeits that challenge on appeal in a civil case. See *In re Liquidations of Reserve Insurance Co.*, 122 Ill. 2d 555, 567-68 (1988).

¶ 28     The Attorney General acknowledges, however, that we may overlook general forfeiture principles in a civil case and consider an issue not raised below if the issue is one of law, is fully briefed and argued by the parties, and the public interest favors considering the issue now. See *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 73 (2002). Additionally, we may also consider an issue of law that was not decided by the trial court if it was decided by the appellate court. *In re Marriage of Rodriguez*, 131 Ill. 2d 273, 279 (1989). The doctrines of forfeiture and waiver, however, should not be ignored if it is clear that the party claiming forfeiture would have been able to refute or overcome the arguments if it had been given the opportunity to do so in the trial court. *Id.* at 279.

¶ 29	Applying the above-mentioned precepts to the circumstances here, we find that defendants did not forfeit their argument, but that even if they did, this court would nevertheless choose to consider it. First, it does not appear that any error was actually *caused* by defendants' actions. Defendants correctly identified the constitutional right at stake some four months before the jury trial on valuation in their motion seeking a *Kirby* hearing. As the appellate court pointed out, defendants argued in that motion that the just-compensation guarantee of the fifth amendment applied to Illinois condemnation cases, and under *Kirby*, just compensation required that the owner receive what the property was worth on the date the government tendered payment. Defendants asserted that the value of their land had increased since the date of valuation in this case, December 19, 1999. The motion analyzed *Kirby* in detail, noted that Illinois law (especially, section 7-121) required that the date of filing be considered the valuation date, and requested a posttrial hearing to determine if the value of the property had "materially changed" after such a long delay. In support of their request, defendants also cited recent amendments to the Act, which allow for a different date of valuation for cases filed after its effective date of January 1, 2007. See 735 ILCS 30/10-5-60 (West 2008) ("[I]f the trial commences more than 2 years after the date of filing the complaint to condemn, the court may, in the interest of justice and equity, declare a valuation date no sooner than the date of filing the complaint to condemn and no later than the date of commencement of the trial ***."); 735 ILCS 30/90-5-5 (West 2008) ("This Act applies only to complaints to condemn that are filed on or after its effective date."); 735 ILCS 30/99-5-5 (West 2008) (effective date of new act is January 1, 2007).

¶ 30	At the hearing on the *Kirby* motion conducted a month prior to trial, defendants arguably raised the constitutionality of the statute as applied when they argued that the Illinois statutory scheme in effect at the time of the filing of this condemnation action "does not allow for just compensation" because it requires valuation as of the date of filing, but the Constitution requires that just compensation be measured as of the date of taking, which is the date the amount of the jury award is deposited. To remedy the situation, defendants looked to the relief applied in *Kirby* and asked for a posttrial hearing to determine whether there had been an increase in the value of the land since 1999, and if so, set just compensation based on the date of the taking. The one snag in the remedy requested by defendants is that Illinois allows for the right to a jury trial in condemnation cases. Thus, it would not have been as simple as having the trial court modify the jury's award to reflect just compensation as of the date of deposit.

¶ 31	We can understand why one might be "appalled at the waste of judicial resources inherent in the defendants' request that the jury be asked to determine the 1999 value of the [p]roperty but that the determination should then be set aside and the current value of the [p]roperty be determined" by the court, and if the value had materially increased, to order a second jury trial using a current valuation date. 401 Ill. App. 3d at 993. However, it appears from the record that defendants' failure to request a different valuation date for the jury to consider or to more precisely argue the unconstitutionality of the statute as applied would not have ultimately kept the trial court from proceeding to a jury trial based on the 1999 valuation date in this case.

¶ 32	At the hearing on defendants' *Kirby* motion, the District strenuously argued both that

*Kirby* did not apply in Illinois because it was limited to federal procedural rules governing eminent domain and that, in any event, *Kirby* could not be applied to Illinois law where there was no indication that there was any wrongful delay on the part of the government in bringing the case to trial. The trial court was persuaded by the argument that *Kirby* could not be applied in any application where there was no governmental delay. It is elementary therefore that even if defendants had argued for a jury instruction using a 2007 valuation date based on *Kirby* or specifically argued that the statute was unconstitutional as applied in the absence of using a 2007 valuation date, it would have made no ultimate difference here. The court would have denied any such request based on its belief that *Kirby* could not be applied at all where there was no allegation that any of the eight-year delay was caused by the actions of the District. Under all of the above noted circumstances–including the fact that defendant raised in the trial court the general constitutional question involved here–we find no forfeiture or waiver that would preclude our consideration of the merits of the *Kirby* issue, which was fully briefed and argued in the appellate court and then resolved by that court.

¶ 33                                    II. Application of *Kirby*

¶ 34        Finding no forfeiture, we turn now to the issue of whether the appellate court correctly applied *Kirby* to order a hearing on remand to determine if the property has materially increased in value, and if so, to hold another jury trial on valuation. In *Kirby*, the government filed a condemnation complaint on August 21, 1978, to take timber company land for a forest preserve. Trial began before a commission on March 6, 1979, which was also the date of valuation used for assessing just compensation. The commission entered a report recommending compensation of roughly $2.3 million. Both parties filed objections in federal district court, and that court entered judgment on the commission's report. However, a period of three years and three weeks elapsed between the date of the trial (the valuation date) and the date of the taking (the date the government made payment for the land and acquired title).

¶ 35        The United States Supreme Court granted *certiorari* in the case to determine the date on which a taking occurs and to consider whether there was any obligation of the government to pay interest from the date of trial to the date of deposit. *Kirby*, 467 U.S. at 9. The Court began by noting that the fifth amendment does not preclude the government from taking land and paying for it later. But the fifth amendment requires that if disbursement of the award is delayed, the owner is "entitled to interest thereon sufficient to ensure that he is placed in as good a position pecuniarily as he would have occupied if the payment had coincided with the appropriation." *Kirby*, 467 U.S. at 10-11. Thus, the court found identification of the time of the taking of a tract of land crucial to the amount of compensation to which an owner is constitutionally entitled. *Id.* at 11.

¶ 36        *Kirby* then noted that *Danforth v. United States*, 308 U.S. 271, 284 (1939), had held that unless a taking has occurred "previously in actuality or by a statutory provision," a taking in a condemnation suit takes place upon the payment of the money award by the condemnor. *Kirby* noted that justification for the rule was based on the understanding that the "owner is protected by the rule that title does not pass until compensation has been ascertained and paid." (Internal quotation marks omitted.) *Kirby*, 467 U.S. at 12 (quoting *Danforth*, 308 U.S.

at 284-85). *Kirby* further cited a federal rule that permits the government "to dismiss a condemnation suit at any time before 'compensation has been determined and paid,' unless the [g]overnment previously has 'acquired the title or a lesser interest ... or taken possession.' " *Kirby*, 467 U.S. at 12 (quoting Fed. R. Civ. P. 71A(i)). The Court observed that the government's ability to abandon the proceeding in this fashion would be difficult to understand if a taking were effectuated any time prior to tendering payment. See *Kirby*, 467 U.S. at 12. *Kirby* also looked to a federal provision equivalent to our state quick-take procedure (see 735 ILCS 5/7-103 (West 1998)) as support for its holding that a taking could not have occurred prior to payment and the government's acquiring of title and the right to possess the land. The Court observed that "the option of peremptorily appropriating land prior to final judgment, thereby permitting immediate occupancy and improvement of the property[,] *** would have been superfluous if, as petitioner contends, a taking occurred upon the filing of the complaint in a [straight-condemnation] suit." *Kirby*, 467 U.S. at 12-13. Accordingly, *Kirby* concluded that the taking of the petitioner's land occurred on March 26, 1982, the date the award was paid, and therefore, petitioner was not due any interest.

¶ 37    *Kirby* further found that its conclusion did not dispose of the case because it still had to determine whether the award itself satisfied the requirements of the fifth amendment. *Kirby*, 467 U.S. at 16. The Court agreed with the landowner's argument that, to the extent that the $2.3 million awarded by the jury is less than the value of the land on March, 26, 1982, the date of the taking, it has been denied just compensation. The government had argued in response that a general rule setting a date of valuation in all cases (like the rule setting the time of trial as the date of valuation) was necessary so the trier of fact would know the date on which the value of the land should be assessed. The Court, however, was insistent that the government's argument did not negate the landowner's constitutional claim:

> "The Government's argument provides a plausible explanation for the valuation procedure used in this case and other cases, but it does not meet [the landowner's] constitutional claim. However reasonable it may be to designate the date of trial as the date of valuation, if the result of that approach is to provide the owner substantially less than the fair market value of his property on the date the [government] tenders payment, it violates the Fifth Amendment." *Kirby*, 467 U.S. at 17.

¶ 38    *Kirby*'s solution to the problem was to allow the landowner on remand "to present evidence pertaining to change in the market value of the tract during the period between those two dates." *Kirby*, 467 U.S. at 19. Finally, the Court opined that because a landowner would be obliged to bear some litigation costs in bringing a claim that there had been a change in value, it would have the healthy effect of dissuading landowners from lightly deciding to undertake such claims. *Kirby*, 467 U.S. at 19 n.29.

¶ 39    In applying *Kirby* to the present case (or even deciding in the first instance whether it should be applied to Illinois law), it is necessary to know the point in time a taking occurs in Illinois. Because if a taking in Illinois occurs on the date the condemnation action is filed, then the valuation date would correspond with the taking date and there would therefore be no *Kirby* problem to speak of.

¶ 40    We find that a taking in Illinois for the purposes of applying *Kirby* occurs on the date that the government (1) deposits the amount of compensation that has been ascertained and awarded, *and* (2) acquires title and the right to possess the property. The District relies primarily upon *Dunlevy*, *Blue Island*, and *City of Chicago v. Farwell*, 286 Ill. 415 (1918), to support its argument that a "taking" occurs upon the mere filing of the condemnation complaint. We find that the District's reliance upon *Dunlevy* and *Blue Island* is misplaced, and to the extent that *Farwell* can be used to support the District's argument, we find that it was wrongly decided and must be overruled.

¶ 41    *Dunlevy* merely held that the value of land in a condemnation case should be measured as of the date of the filing of the petition to condemn. *Dunlevy*, 91 Ill. at 53. It did not hold that a "taking" occurred upon the filing of the petition to condemn. Instead it held just the opposite:

> "The filing of a petition to condemn property is not a taking of the same. If the [government] took possession of defendant's property before the damages were assessed and paid, they were trespassers ***. *** The defendants had the right to the possession and use of their property after the petition was filed, the same as before, and we perceive no reason why they should have the use of the property, and at the same time be allowed interest upon its value, before it was actually taken." *Dunlevy*, 91 Ill. at 54.

¶ 42    The more recent decision of this court in *Blue Island* did not purport to address the question of when a taking occurs. Rather, the court simply repeated the established rule that the value of property to be taken in a condemnation proceeding is determined using the date the petition for condemnation was filed. See *Blue Island*, 49 Ill. 2d at 411.

¶ 43    Thus, neither *Dunlevy* nor *Blue Island* supports the District's argument, and *Dunlevy* actually supports the landowners' argument. That leaves the District to rely upon *Farwell*. But we do not find that case persuasive here. In particular, the District relies upon the following language from *Farwell*:

> "The constitution provides that private property shall not be taken or damaged for public use without just compensation, and it is always held that compensation is to be determined as of the time of the taking. There is a diversity of rule in different jurisdictions as to the time when a taking for public use occurs, but in this State that question has passed beyond the stage of discussion and has become a fixed rule, which is, that the compensation is to be determined as of the date of filing the petition and not at the time of the trial." *Farwell*, 286 Ill. at 417.

Farwell seems to have confused the date of valuation with the date of taking and equated the two as necessarily being the same thing. In support of the above-quoted paragraph, *Farwell* cited *Dunlevy*. But as we have noted, *Dunlevy* clearly held that the filing of a condemnation complaint is not a taking. Rather, a taking does not occur in Illinois until the condemning authority has paid the condemnation award and acquired the right to possess the property. *Dunlevy*, 91 Ill. at 54.

¶ 44    *Dunlevy* is consistent with this court's most recent decision grappling with the question of the point in time when a taking occurs under Illinois law. In *Forest Preserve District v.*

*West Suburban Bank*, 161 Ill. 2d 448, 455 (1994), this court noted that the issue of when a taking occurs in a condemnation proceeding "is a somewhat amorphous question." In one sense, "as a matter of legal fiction," it has been held that a taking occurs upon the filing of a complaint because the title acquired upon payment of just compensation relates back to the time of the filing of the complaint. See *West Suburban*, 161 Ill. 2d at 455 (discussing *City of Chicago v. McCausland*, 379 Ill. 602 (1942)). But in a more "corporeal sense," a taking does not take place until compensation has been ascertained and paid, because until that point, the owners "continue to enjoy title and the rights associated with possession of the property." *West Suburban*, 161 Ill. 2d at 455-56.

¶ 45   The appellate court here correctly noted that *West Suburban*'s discussion of cases finding a taking dating back to the filing of the complaint concerned whether landowners were liable for property taxes assessed after the condemnation complaints had been filed. See 401 Ill. App. 3d at 989. A party is liable for taxes on the property until compensation is paid and the landowner relinquishes title, but he may be reimbursed by the county for the taxes paid dating back to the filing of the complaint. Yet, the condemning authority could abandon the taking at any time before acquiring title, leaving the landowner liable for the taxes without any hope of reimbursement. We agree with the appellate court that the discussion in *West Suburban* of cases like *McCausland* does not inform our decision here regarding the time of a taking for purposes of the holding in *Kirby*.

¶ 46   Given that the condemning authority in an Illinois condemnation proceeding can abandon the proceeding at any time prior to making payment and acquiring title and the right to possession, we too find it difficult to fathom how a taking could occur any sooner. See *Kirby*, 467 U.S. at 12 (the government's "capacity to withdraw from the proceeding *** would be difficult to explain if a taking were effectuated prior to tendering of payment"); see also *Danforth*, 308 U.S. at 284 ("Until taking, the condemnor may discontinue or abandon his effort[;] [t]he determination of the award is an offer subject to acceptance by the condemnor and thus gives to the user of the sovereign power of eminent domain an opportunity to determine whether the valuations leave the cost of completion within his resources."). Moreover, the fact that Illinois has a quick-take statute is further support for our conclusion that a taking did not occur upon the filing of the action. The option to file a quick-take proceeding giving the condemnor immediate right of possession would be superfluous if a taking had already occurred upon the filing of the complaint.

¶ 47   The District cites the United States Supreme Court's decision in *Danforth* to argue that the Supreme Court would recognize an exception to the "time of taking is the time of payment rule" in state condemnation proceedings where a state statute defines a different time of taking. We disagree that the exception noted in *Danforth* is applicable here. In *Danforth*, the Court held that the date of taking is the date the government pays for the land and acquires title. *Danforth*, 308 U.S. at 284. It found an exception to that holding exists for jurisdictions in which the taking occurs "by a statutory provision, which fixes the time of taking by an event such as the filing of an action." *Danforth*, 308 U.S. at 284. The District argues that Illinois has such a rule fixing the date of taking as the date the condemnation action is filed. But we note that section 7-121 of the Illinois Eminent Domain Act does not mention when a *taking* occurs. Rather, it addresses only the date of valuation for purposes

-12-

of determining just compensation at the condemnation proceedings. Thus, Illinois does not have a *statute* setting the date of taking earlier than the date of payment of the compensation award. Furthermore, to the extent that the District is arguing that Illinois has a state judicial rule setting the date of taking as the date of filing, we have already rejected that notion based on our readings of *Dunlevy* and *West Suburban*.

¶ 48 The District cites *Brown v. United States*, 263 U.S. 78 (1923), as an example of the kind of state statue that *Danforth* believed would qualify for the exception to the general rule that a taking does not occur prior to payment. But the Idaho statutory scheme at issue in *Brown* is clearly distinguishable from section 7-121 of our act. Among other differences, the scheme in *Brown* required the payment of interest to the defendant from the date of summons. Our statutory provisions do not require the payment of interest between the date of the filing of the condemnation action and the date of the judgment.

¶ 49 If a "taking" truly occurs under Illinois law upon filing, such would render our taking provisions unconstitutional in the absence of a statutory provision requiring the payment of interest to the landowner from the date of filing to the date of judgment. See *Kirby*, 467 U.S. at 11 & n.16 (citing *United States v. 329.73 Acres of Land*, *Situated in Grenada & Yalobusha Counties*, 704 F.2d 800, 812 & n.18 (5th Cir. 1983) (en banc) (the fifth amendment mandates not only that a landowner be awarded just compensation, represented by the fair market value of the property on the date taken, but also that just compensation in the constitutional sense is the fair market value of the property at the date of taking, plus interest from that date to the date of payment)). We can easily avoid that result, however, because we find no doubt that a taking does not occur for our purposes until, at the very earliest, the date the government deposits the condemnation award and is given the right to take title and possession.

¶ 50 III. Failure to Demand Speedy Trial

¶ 51 Both the District and the Attorney General argue that the appellate court failed to apply the holding of *Blue Island*, which, they contend, provides that a condemnation defendant who wishes to correct a situation where a case lingers for a long time and the property's value increases should either (1) move to dismiss the condemnation case or (2) file a "demand for a speedy trial." Failure to do so, they argue, results in forfeiture of any claim to constitutional injury resulting from the delay. The Attorney General adds that the fifth amendment does not prohibit states from requiring landowners to follow particular procedures (such as those set forth in *Blue Island*) to perfect their right to just compensation; all it demands is that the State's procedures be "reasonable, certain and adequate" (*Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985)) and comport with due process.

¶ 52 We disagree that *Blue Island* controls the outcome here. First, the case is distinguishable on its facts. In *Blue Island*, the landowner maintained that a four-year delay in the condemnation proceeding had deprived him of just compensation because the value of the land had increased from the date the complaint was filed to the date the judgment was entered. This court noted that the defendant was represented by an experienced

condemnation attorney during the four-year period that the case was pending, who did not make a demand for a hearing, but instead agreed to 20 continuances that were requested by the condemning authority. *Blue Island* limited its holding to the facts, finding that "[u]nder these facts and the law as stated in *Chapin* and *Winkelman* we cannot say that the trial court erred in denying the defendant's traverse as to the constitutional issues involved in the delay." *Blue Island*, 49 Ill. 2d at 412.

¶ 53    We note that *Blue Island* seemed to assume that there was no constitutional problem with a long delay where the landowner shared complicity in the delay. Here, in contrast to *Blue Island*, it does not appear that defendants acquiesced to any unnecessary delay. Rather, it appears that both sides in the proceedings below vigorously litigated the issues as they arose. The District points to the delay incurred as a result of defendants' efforts to resolve ownership of the property and to gain control of the right to direct the litigation, but we do not believe that these efforts were unnecessary or that they wrongfully prolonged the litigation so that they could be said to result in holding defendants chargeable for delay and denying them their constitutional right to just compensation.

¶ 54    Second, we note that *Blue Island* looked at the case through the lens of *Winkelman* and *Chapin* and saw the issue more in the nature of a tort-like action for damages to compensate for the government's wrongful delay, rather than as a simple constitutional question. *Blue Island*, of course, did not have the benefit of the *Kirby* decision, as it was decided 13 years before *Kirby*. In looking to *Winkelman* and *Chapin*, *Blue Island* began its analysis by noting that the rule requiring valuation as of the date of filing "could be productive of injury to the land owner." *Blue Island*, 49 Ill. 2d at 411. It then cited *Winkelman* for the notion that the condemning authority "should prosecute the suit with diligence and that it is liable to the land owner for damages occasioned by a wrongful delay." *Blue Island*, 49 Ill. 2d at 411; *Winkelman*, 213 Ill. 360. It also cited *Chapin* for the proposition that a court may properly dismiss a condemnation suit for failure of the plaintiff to prosecute it with diligence, " 'where no sufficient excuse is presented.' " *Blue Island*, 49 Ill. 2d at 411 (quoting *Chapin*, 226 Ill. at 501). *Blue Island* then observed that the right to recover damages for the delay is not based simply upon the fact that there is a delay, but on the theory that there is a "wrongful" delay. *Blue Island*, 49 Ill. 2d at 411. It also implied that a landowner confronted with the possibility of delays caused by the government had a duty to request a speedy trial based on the following language from *Winkelman*: " 'The defendant who stands by and makes no effort to bring his cause to trial should be considered as waiving damages caused by the delay. If he desires a speedy trial, it is his duty to advise the court of that fact.' " *Blue Island*, 49 Ill. 2d at 411 (quoting *Winkelman*, 213 Ill. at 364).

¶ 55    We find that the discussion in *Blue Island* with respect to wrongful delay and the need for a speedy-trial request, which relies upon *Winkelman* and *Chapin*, is not applicable here. Defendants are not seeking damages, but rather just compensation. We do not believe that the holding of *Kirby* can only be applied where there is wrongful conduct on the part of the government. Nor do we believe that defendants were required to demand a speedy trial under the circumstances of the present case. A defendants' need to push for a timely trial makes sense in the context of a situation where a landowner is encountering problems with delay in the government's prosecution of the case, as was the case in *Winkelman*, *Chapin* and *Blue*

-14-

*Island*. But if neither party is doing anything other than vigorously litigating the issues that legitimately come up in the proceeding, we see no valid reason why a speedy-trial demand would be required to preserve a landowner's right to just compensation, nor can we envision what practical good it would do to make such a demand. As the appellate court presciently noted,

> "Would such a request require the parties to cut short discovery? Would it require a defendant to forgo its right to file a traverse opposing the condemnation, or prevent the plaintiff from bringing motions for summary judgment on the issues raised in the traverse, as the plaintiff did here? Would the trial court be required to grant such a request for a speedy trial? If it did not, would that restore the defendant's right to seek a more current valuation for the property that the plaintiff seeks to take? What about cases where, as here, the ownership of the property was the subject of a pending legal dispute when the condemnation complaint was filed?
>
> Illinois law provides no answers to these questions. Indeed, we have not found any case in which a speedy condemnation trial was requested. Because it is unclear what is meant by the 'speedy trial' remedy that [the District] and [the Attorney General] argue the defendants should have sought, that remedy is not sufficiently 'certain and adequate' under *Williamson County* to serve as a viable alternate method for seeking just compensation." 401 Ill. App. 3d at 997.

We agree with the appellate court's assessment. Accordingly, we do not believe that defendants' failure to follow the strictures of *Blue Island* constituted a forfeiture of its just compensation claim.

¶ 56          IV. Option to Abandon the Condemnation Proceeding

¶ 57     We next consider two issues raised by defendants in their cross-appeal before this court. Defendants first argue that the appellate court erred in holding that on remand the District may choose to abandon this condemnation case, even though the District has already deposited funds pursuant to the trial court judgment but has not taken possession. 401 Ill. App. 3d at 1005. Defendant points out that earlier in its opinion, the appellate court held that, "for the purposes of the fifth amendment, we believe that for Illinois takings just as for federal takings, the date of the taking is the date on which the government actually acquires the property by paying for it." 401 Ill. App. 3d at 990. The District deposited the jury's award of just compensation on December 20, 2007. Defendants argue that title to the property passed to the District on that date, and the District cannot now abandon that which it has already taken. Moreover, defendants contend that the date of valuation for any new trial must be December 20, 2007, and not, as the appellate court found, the date of any new trial.

¶ 58     The problem with defendants' argument is that it ignores that the trial court in entering judgment on the jury's award and allowing the District to make the deposit, specifically ordered that the District's right to acquire title to the property and possession had to await a future order from the court. The court did this to allow the District to perform due diligence with respect to some environmental concerns with the property and also because defendants were raising the *Kirby* issue and challenging the award as denying just compensation. The

record does not reflect that the trial court ever rescinded its order deferring the right to acquire title and possession. Moreover, the appellate court has now vacated the jury's award of compensation (subject to reinstatement), and we therefore do not yet know if the amount deposited reflects payment of just compensation, which would effectuate a taking. We note that normally a taking does occur upon deposit of the judgment amount awarded by the jury. But under the special circumstances here that is not the case. The reason for the rule that the taking occurs upon payment is because that is normally when the condemning authority acquires title and the right to possession. See, *e.g.*, *West Suburban*, 161 Ill. 2d at 455-56; *Dunlevy*, 91 Ill. at 54. But because of the trial court's order deferring the rights to title and possession, which normally occur as a matter of law upon payment, we can only conclude that the "taking" has not yet been consummated. For that reason, the appellate court was correct to hold that "the date of any new trial, rather than the December 2007 time of the [District's] deposit, will more closely approximate the 'date of taking.' " 401 Ill. App. 3d at 1005.

¶ 59 We also believe that it follows logically that if a taking has not yet occurred, then the District is free to abandon the proceeding if it chooses. See *West Suburban*, 161 Ill. 2d at 456. We also agree with the following statement of the appellate court setting forth equitable grounds for its finding that the District still had the option to abandon the condemnation proceeding if it wishes to choose that course:

> "Although the [District] here properly deposited the amount of the jury verdict following the trial, it has not taken possession of the [p]roperty, due to the pendency of this appeal. Our ruling in this case *** would cause prejudice to the [District] if the [District] were not given the opportunity to abandon the taking now that the cost of acquiring the [p]roperty might be substantially higher. Thus, in this case we hold that the [District] may abandon the taking if it wishes and withdraw its deposit of the amount of the jury's verdict." 401 Ill. App. 3d at 1005.

¶ 60                                      V. Good-Faith Negotiation

¶ 61 Defendants next argue that the appellate court erred in affirming the trial court's grant of summary judgment, finding that the District engaged in good-faith negotiations prior to filing suit. Specifically, defendants argue that the District's offer was not supported by reasonable evidence of value, and its negotiations were therefore not conducted in good faith.

¶ 62 Summary judgment is proper when the pleadings, depositions and affidavits on file demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 1998). This court conducts a *de novo* review of an order granting summary judgment. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010).

¶ 63 The Eminent Domain Act provided at the time of the negotiations at issue here that a governmental body may exercise the power of eminent domain through a condemnation proceeding only where, among other things, "the compensation to be paid for or in respect of the property sought to be appropriated *** cannot be agreed upon by the parties interested." 735 ILCS 5/7-102 (West 1998). This provision has been interpreted by this court

as requiring the condemnor to negotiate with the landowner in good faith over the amount of compensation to be paid as a "condition precedent" before it initiates proceedings to take the landowner's property through eminent domain. *Department of Transportation ex rel. People v. 151 Interstate Road Corp.*, 209 Ill. 2d 471, 480 (2004). An offer made by a governmental body based on the advice of an experienced appraisal consultant is normally sufficient to establish a good-faith attempt to agree. See *151 Interstate*, 209 Ill. 2d at 489-90; *Blue Island*, 49 Ill. 2d at 413-14.

¶ 64    In the present case, the pleadings, depositions and affidavits on file indicate that the District negotiated in good faith as a matter of law. When the District decided to acquire the property in November 1999, it obtained a preliminary engineering report and, based on that, a preliminary estimate of value. The Polach Appraisal Group (Polach) provided a verbal estimate on November 23, 1999, that the property had a value of $10.3 million. The District's board of commissioners authorized the District to negotiate for the property. The District subsequently sent letters offering $9.27 million and gave the owners 10 business days to respond before the matter would proceed to condemnation. The District's chief negotiator testified in his deposition that it was the District's policy to make its initial offer 10% below the appraised value. If the landowner made a counteroffer, the negotiator could immediately offer the full appraised value, and could go as high as 10% more than the appraised value before having to seek further approval from the board.

¶ 65    On December 3, 1999, the District received an updated verbal appraisal from Polach of $11.2 million. But on December 6, 1999, David W. Phillips, a second appraiser that the District had hired, came back with his estimate stating that he believed the Polach appraisal was too high, and it was his opinion that the property had a value of $8.995 million. The owners rejected the District's initial offer of $9.27 million, but did not bother to make any counteroffers.

¶ 66    As the appellate court noted, the District's decision to offer defendants slightly less than the first appraisal it received as a starting offer–but more than that the second appraisal it received prior to its decision to commence the condemnation proceedings–is not comparable to the egregious behavior present in the two cases relied upon by defendants to support their position. See 401 Ill. App. 3d at 974 (discussing *City of Chicago v. Zappani*, 376 Ill. App. 3d 927 (2007) (where the city offered between 45% and 60% of the appraised value of the parcels it sought), and *City of Naperville v. Old Second National Bank of Aurora*, 327 Ill. App. 3d 734 (2002) (where the city offered less than half of its own appraised value for the property)). In contrast, the District's offer here cannot "be viewed in the light of a ridiculously low offer without foundation on a take-it or leave-it basis." *Blue Island*, 49 Ill. 2d at 414. Under these circumstances, then, we find that the District's negotiations were clearly conducted in good faith and that there was an inability of the parties to agree on an acceptable purchase price. Thus, the District's filing of the condemnation action in this case was allowable.

¶ 67    Defendants also argue that the District's appraisal failed to take into account the Summit parcel's contract price and that this violated accepted appraisal industry standards. Defendants, however, have forfeited the argument by failing to present it to the trial court, and we will therefore not consider it here. See *In re Application of the County Treasurer &*

*ex officio County Collector*, 373 Ill. App. 3d 679, 702 (2007).

¶ 68    Defendants make two additional arguments related to good faith. They argue that the District's lack of good faith is shown by its failure to attach an appraisal to its offer letters and by setting a limit of 10 days for negotiations. The appellate court correctly found that neither of these actions violated any constraints placed on condemning bodies. See 401 Ill. App. 3d at 975. Under section 7-102.1 of the Act, the condemning authority's offer letter to the landowner must include "[t]he amount of compensation for the taking of the property proposed by the agency, and the basis for computing it." 735 ILCS 5/7-102.1(d)(1) (West 1998). No Illinois court has ever held that including "the basis for computing" the amount of compensation means that the condemning authority must actually tender its own appraisal to the landowner. Because plaintiff was not required by law to attach an appraisal to its offer letter, we decline to find that the failure to do so constitutes a lack of good faith. Similarly, we conclude that a condemning body is not legally constrained to provide more than 10 days for negotiations in order to satisfy the good-faith requirement. See *Blue Island*, 49 Ill. 2d at 410, 414; *County Board of School Trustees v. Batchelder*, 7 Ill. 2d 178, 180-82 (1955).

¶ 69                                    CONCLUSION

¶ 70    For the foregoing reasons, we affirm the judgment of the appellate court. We find that the appellate court correctly affirmed the circuit court's order granting summary judgment in the District's favor on the issue of good-faith negotiations. The appellate court also correctly vacated the jury's verdict as to the value of the property, subject to a possible reinstatement by the trial court following a hearing on just compensation using the current value of the property. The cause is remanded to the circuit court of Du Page County for further proceedings consistent with this opinion.

¶ 71    Appellate court judgment affirmed;

¶ 72    cause remanded.