2021 IL App (1st) 200813

No. 1-20-0813

Opinion filed December 14, 2021

SECOND DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal from the Circuit Court of Cook County |
| CHICAGO TITLE LAND TRUST COMPANY, as Trustee Under Trust Agreement Dated September 30, 1996, Known as Trust No. 1103184; THE COOK COUNTY TREASURER; UNKNOWN OWNERS; and NONRECORD CLAIMANTS | ) ) ) ) ) ) | No. 15 L 50611  The Honorable Mary Colleen Roberts, Judge Presiding. |
| Defendants | ) ) | |
| (Chicago Title Land Trust Company, as Trustee Under Trust Agreement Dated September 30, 1996, Known as Trust No. 1103184, Defendant-Appellant). | ) ) ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.

Justices Howse and Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1        Following a bench trial to determine final just compensation in an eminent domain proceeding, the defendant Chicago Title Land Trust Company, as trustee under a trust agreement dated September 30, 1996, known as trust No. 1103184 (defendant), appeals several rulings by the

trial court pertaining to the operative date for valuing the property, along with its denial of the defendant's motion to continue the trial. We affirm the judgment of the trial court.

¶ 2                                    I. BACKGROUND

¶ 3        On August 25, 2015, the Illinois State Toll Highway Authority (Toll Highway Authority) filed a complaint for condemnation to acquire a 1.247-acre parcel of land at the corner of Elmhurst Road and Old Higgins Road in unincorporated Cook County, near Elk Grove Village, as part of its Elgin O'Hare Expressway Western Access Project. The defendant was the owner of the subject property. The Toll Highway Authority sought to acquire the subject property by use of the quick-take procedure of the Eminent Domain Act (735 ILCS 30/20-5-5 *et seq.* (West 2014)), which the trial court allowed and set the preliminary just compensation for the taking of the subject property at $800,000. After the Toll Highway Authority deposited that sum of preliminary just compensation with the county treasurer, the trial court entered an order on November 19, 2015, vesting the Toll Highway Authority with title to and right to immediate possession of the subject property.

¶ 4        The case proceeded to discovery for a final determination of just compensation for the taking. During discovery, three expert witnesses were disclosed to testify on issues of valuation and just compensation for the taking of the subject property. Two of these expert witnesses, Kenneth Polach and Nicholas Solano, were disclosed by the Toll Highway Authority. Although the full expert witness disclosures and reports are not included in the record on appeal, the defendant's brief indicates that it was disclosed in 2015 that Polach would testify that the value of the subject property was $800,000, and Solano was disclosed in 2019 to testify that its value was $870,000. The defendant disclosed in 2016 that Neil J. Renzi would testify that the value of the subject property was $2,715,000. All three expert witnesses used August 25, 2015, which was the date

that the complaint had been filed, as the operative date for determining just compensation.

¶ 5    There are several court orders pertinent to the issues on appeal, specifically those setting deadlines for the filing of motions and those involving whether the case was set for jury trial on February 10, 2020. The first is an order entered on July 16, 2019, in which the trial court initially set the case for jury trial on January 13, 2020. The case was continued to July 31, 2019, on which date the trial court entered an order stating, "The trial date of January 13, 2020 is stricken and continued to February 10, 2020 at 9:30 AM in Room 2505." That order also set a pretrial date of February 6, 2020, "where parties will present their motions *in limine*."

¶ 6    On September 17, 2019, the trial court entered an order allowing the two law firms that had been representing the defendant until this time to withdraw their appearances. On November 12, 2019, as no substitute appearance had been filed, the trial court entered an order of default against the defendant. On December 12, 2019, an appearance was filed on behalf of the defendant by the Law Office of Arnold H. Landis, P.C. A motion to vacate the default was also filed, which the trial court granted on December 26, 2019.

¶ 7    On January 9, 2020, which was a date previously set for hearing on a motion for summary judgment that had been filed while the defendant was in default, the trial court entered an order stating, "This matter is set for pretrial on 2/10/2020 9:30 am." On January 13, 2020, which would have been the originally set trial date, the trial court entered an order stating, "Matter stricken or withdrawn from call. 2/10/20 date to stand."

¶ 8    On January 17, 2020, the trial court entered an order that counsel for all parties were to appear on January 21, 2020, "to discuss deadlines for any pre-trial motions regarding the trial scheduled for February 10, 2020." Also on January 17, the Toll Highway Authority filed a motion to schedule a jury view of the subject property on February 14, 2020. On January 21, 2020, the trial court

granted that motion and scheduled the jury viewing for February 14.

¶ 9     A second order was also entered on January 21, 2020, which set a deadline of January 24, 2020, for the filing of any motions *in limine*. It also required any responses and courtesy copies to be provided seven days thereafter. Finally, it provided that the hearing on any motions *in limine* and the pretrial conference was set for February 10, 2020.

¶ 10    On January 29, 2020, an order was entered in the case by the presiding judge of the law division, which stated that "the above case is scheduled to appear for trial setting in Courtroom 2005 on February 20, 2020." That order further stated, "All cases appearing for trial setting will be receiving trial dates and, as such, all parties should discuss trial dates to suggest to the court that are within six months."

¶ 11    On February 6, 2020, which was the date originally set for the presentation of motions *in limine*, the trial court entered an order stating, "Matter stricken or withdrawn from call; pre-trial/trial date to stand on Feb. 10, 2020."

¶ 12    On February 7, 2020, an additional appearance on behalf of the defendant was filed by a second law firm, Neal & Leroy, LLC. Also on February 7, 2020, a motion was filed on behalf of the defendant seeking to bar the testimony of Pollock and Solano. The basis of the motion was that both of them had improperly used the date of filing the complaint (August 25, 2015) as the operative date for determining the amount of just compensation for the taking of the subject property. The defendant argued that it was constitutionally entitled to have compensation determined as of the date of "taking" and that in this case the date of taking was November 19, 2015, when the Toll Highway Authority had acquired title and the right to possession of the property after depositing the amount of preliminary just compensation awarded. The defendant argued that this result was required by *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1

(1984), and *Forest Preserve District of Du Page County v. First National Bank of Franklin Park*, 2011 IL 110759, and that these cases had "invalidated" section 10-5-60 of the Eminent Domain Act (735 ILCS 30/10-5-60 (West 2020)), which establishes the valuation date as the date that a complaint to condemn is filed. It argued that an appraisal using a valuation date other than the date of taking is inadmissible and that, as a result of the Toll Highway Authority's failure to disclose an opinion using the constitutionally required valuation date, it had "no admissible evidence relating to the value of the subject property as of the constitutional date of taking."

¶ 13    On February 10, 2020, the parties appeared before the trial court, and the defendant's attorneys indicated their intention to present their motion to bar witnesses to the trial court. The attorney for the Toll Highway Authority objected to the court's consideration of the motion on the grounds that it was untimely, as the trial court's order of January 21, 2020, had required any motions *in limine* to be filed by January 24, 2020, and the defendant's motion had been filed after that date and without leave of court to do so. In response, the defendant's attorneys argued that the court should exercise its discretion to consider the motion based on the constitutional magnitude of the question involved. The trial court denied the defendant's motion based on the fact that it was untimely, had been filed without leave of court, and was first presented on the day of trial.

¶ 14    Thereafter, the defendant's attorneys indicated that the defendant may wish to seek certification of the question under Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019). Further discussion then occurred about the fact that the motion that had been filed only sought to bar witness testimony based on the valuation date that the witnesses used and the fact that the basis for its denial was the untimeliness of its filing and presentment. The trial court clarified that the defendant's motion had not raised the substantive question of whether the subject property must be valued as of the date of "taking," as opposed to the date of filing the complaint. The court noted

that section 10-5-60 provided a procedure by which a trial court could declare a valuation date that was different than the date of filing of the complaint but that no party had ever brought a motion under that statute requesting a valuation date different than the date of filing. The defendant's attorney responded that he was not asking the valuation date to be changed, but rather his argument was that the requirement of section 10-5-60 that valuation be determined as the date of filing the complaint was unconstitutional. The trial court replied that this issue had not been properly presented to it. It stated also that there had been no evidence presented that the subject property had undergone any change in value in the three months between August 25, 2015, and November 19, 2015. The trial court therefore denied the defendant's motion for certified question.

¶ 15    The trial court then asked all the attorneys whether they were ready to proceed to trial. The defendant's attorneys stated that they were unaware of any court order setting the case for trial that day. They asserted there was confusion about whether the case was set for trial, caused particularly by the order of January 21 setting the case for pretrial conference on February 10 and the order entered by the presiding judge of the law division that the case was scheduled for trial-setting on February 20. A lengthy colloquy then occurred, during which the trial court and the attorneys discussed the various orders, set forth above, that referenced the fact that the case was set for jury trial on February 10. The trial judge stated that she could "distinctly remember" that, at the court appearance on January 21, she had said to one of the defendant's attorneys, Arnold Landis, that the case was going to jury trial on February 10 and that it would begin with motions *in limine* and a pretrial conference. The court also stated later in the hearing that the court's clerk had also recently had a discussion with a different attorney from Landis's law firm about the fact that, notwithstanding the presiding judge's order that the case had been put on the trial-setting call for February 20, the case was still set for jury trial on February 10. The trial judge stated that it should

be "no surprise" to the defendant's attorneys that the case was set for trial that day.

¶ 16    The defendant's attorneys next informed the court that the defendant's expert witness, Neil Renzi, was out of town that day and requested that the trial therefore be continued to a date when Renzi was available. The trial court denied the defendant's request for a continuance. The court clarified with the defendant's attorney that the reason Renzi was out of town was not because of a situation such as a family emergency or trip for which he had purchased nonrefundable tickets. The trial court stated that it did not understand why the defendant's attorneys had not anticipated having Renzi present, as they should have known the case was set for trial that day.

¶ 17    Thereafter both parties agreed to waive a jury, and the case proceeded immediately to a bench trial. Solano testified as the only witness. Prior to Solano's testimony, the defendant's attorney objected and moved that his testimony be disallowed because of his use of the date of filing the complaint, not the date of taking, as the valuation date. The trial court overruled the objection, reiterating that it had never had before it a properly supported motion under section 10-5-60 to declare a valuation date different than the date of the filing of the complaint.

¶ 18    Solano proceeded to testify that he had valued the subject property as of August 25, 2015. He testified that he physically inspected it in August 2016 and that its highest and best use was as a commercial property. He reviewed six property sales that he considered to be comparable sales of commercial property in the area. Based on his analysis of the subject property and of the six comparable sales, he expressed the conclusion that the subject property's value was $870,000. The defendant's attorney cross-examined Solano regarding additional sales that he did not include as part of his analysis into the valuation of the subject property. There was no testimony or cross-examination concerning any change in the subject property's value between August 25, 2015, and November 19, 2015.

¶ 19     On February 25, 2020, the trial court entered a final judgment order that, among other things, determined that $870,000 was the full and final just compensation for fee simple acquisition of the subject property as of August 25, 2015.

¶ 20     On March 26, 2020, the defendant filed a posttrial motion. That motion asserted that the trial court had erred by denying the motion to bar testimony of the Toll Highway Authority's expert valuation witnesses, based upon Solano's use of the date of filing and not the date of taking as the valuation date. The motion also argued that the trial court had abused its discretion by refusing continue the trial date, due to the ambiguity of the orders setting the case for trial that day and the prejudice to the defendant of having to proceed to trial without its expert witness.

¶ 21     On June 12, 2020, the trial court entered a written order denying the defendant's posttrial motion. The court reiterated that the reason the motion to bar witnesses had been denied was because it was untimely and had been filed without leave. The court noted that the defendant had nevertheless raised an objection to Solano's testimony during trial, based on his use of the date of filing and not the date of taking. The trial court stated that it was not persuaded that it had erred in overruling the objection and that the defendant was merely rehashing the same arguments it had made previously. As to the denial of a continuance, the trial court found that, regardless of any new evidence presented about why Renzi was out of town on the day of trial, the defendant had failed to provide the court with any information as to any diligence that had been exercised to ensure that the defendant's sole witness was present at the trial. Finally, the trial court found that the record was "replete with references and orders related to the February 10, 2020 trial date" and that thus there should have been no confusion about whether the case was set for trial that day.

¶ 22                                      II. ANALYSIS

¶ 23                                   A. Valuation Date

¶ 24　　The defendant's first argument on appeal is that the proper date that should have been used for determining just compensation for the taking of the subject property was the date of taking, not the date of filing the complaint for condemnation. The defendant asserts that the trial court erred by not applying this rule when it refused to consider the defendant's motion to bar witnesses whose testimony was predicated on an improper valuation date, determined just compensation based on the date of filing, and denied the defendant's posttrial motion.

¶ 25　　The Toll Highway Authority argues that we should affirm the trial court's orders and judgment on the basis that the defendant failed to raise this issue before the trial court in a timely manner. It is clear from the trial court's statements on the record that the reason it denied the defendant's motion to bar witnesses was the fact that the motion was not filed until two weeks after the deadline that the trial court had set for the filing of motions *in limine*. The trial court also stated that it was denying the motion because the defendant had filed it without first seeking leave to file it late and because it was first presented on the day of trial.

¶ 26　　Although the defendant's motion was not titled as a motion *in limine*, a motion to exclude allegedly improper opinion testimony by a witness is a classic example of a motion *in limine*. A ruling on a motion *in limine* is within the discretion of the trial court, and a reviewing court will not reverse it absent a clear abuse of that discretion. *Popko v. Continental Casualty Co.*, 355 Ill. App. 3d 257, 266 (2005) (citing *People v. Owen*, 299 Ill. App. 3d 818, 823 (1998)). A trial court's denial of a motion *in limine* on the basis that it was filed in an untimely manner after the deadline set by court order is not an abuse of discretion, particularly when the motion is made on the day of trial. *Owen*, 299 Ill. App. 3d at 824.

¶ 27　　In this case, the order entered on January 21, 2020, stated that any motions *in limine* were to be filed by January 24 and that any responses were to be filed and courtesy copies e-mailed to the

court by January 31. The defendant's motion to bar witnesses was not filed until February 7 or presented until the day of trial on February 10. It was therefore untimely filed, and there was no time for the Toll Highway Authority to file a written response. The defendant also filed the motion without requesting leave to make an untimely filing. Based on these facts, the trial court was within its discretion to deny the defendant's motion to bar witnesses.

¶ 28    The defendant contends that, despite the trial court's order denying the motion to bar witnesses on grounds of timeliness, it nevertheless preserved review of the substantive issue of the proper valuation date by objecting to Solano's testimony at trial. The objection itself was necessary to preserve review of the motion *in limine* that had been denied. *Career Concepts, Inc. v. Synergy, Inc.*, 372 Ill. App. 3d 395, 402 (2007) (because a trial court's ruling on a motion *in limine* is subject to reconsideration throughout a trial, the movant must object to the evidence when it is introduced at trial to preserve the issue for appeal). However, we agree with the Toll Highway Authority that the defendant's raising of this objection during trial did not require the trial court to excuse the defendant's previous failure to comply with the deadline for filing motions *in limine* or its failure to request leave to file its motion after the deadline. We find no error in the trial court's overruling of the objection.

¶ 29    Even if we considered the defendant's arguments on the merits, though, we find no error under the facts of this case in the trial court's use of the date of filing the complaint as the valuation date or its allowing of expert testimony premised on the use of this date. The defendant argues that the holdings of *Kirby*, 467 U.S. 1, and *Forest Preserve District*, 2011 IL 110759, require that property being taken in eminent domain proceedings be valued as of the date of taking, not the date of filing. The defendant argues that the holding of *Forest Preserve District* "implicitly" or "*sub silentio* invalidated" the requirement of section 10-5-60 of the Eminent Domain Act setting

the valuation date as the date of filing a complaint for condemnation. 735 ILCS 30/10-5-60 (West 2020).

¶ 30   In eminent domain law, the "date of valuation" and the "date of taking" of a property are not identical concepts. See *Forest Preserve District*, 2011 IL 110759, ¶¶ 39, 43. In Illinois, the date of valuation is set by a statute, section 10-5-60 of the Eminent Domain Act, which provides that the fair cash market value of a property in an eminent domain proceeding "shall be determined and ascertained as of the date of filing the complaint to condemn." 735 ILCS 30/10-5-60 (West 2020). That statute also allows for exceptions to this rule in certain situations, by permitting a trial court to declare a different valuation date. The range of permissible dates that may be declared depends on whether or not the property is being acquired by use of the quick-take procedure of the Eminent Domain Act (see *id.* § 20-5-5). Where (as in this case) property is being acquired by use of the quick-take procedure and the trial commences more than two years after the date of the filing of the complaint to condemn, "the court may, in the interest of justice and equity, declare a valuation date no sooner than the date of filing the complaint to condemn and no later than the date on which the condemning authority took title to the property." *Id.* § 10-5-60(ii).

¶ 31   The importance of the "date of taking" in this context stems from the fifth amendment to the United States Constitution, which prohibits private property from being "taken for public use, without just compensation." U.S. Const., amend. V.[1] The United States Supreme Court recognized in *Kirby* that the owner of private property being taken "is constitutionally entitled to the fair market value of its property on the date of the taking." *Kirby*, 467 U.S. at 16. However, the *Kirby*

---

[1] This clause is made applicable to the states through the fourteenth amendment. *Murr v. Wisconsin*, 582 U.S. ___, ___, 137 S. Ct. 1933, 1942 (2017); U.S. Const., amend. XIV. The Illinois Constitution likewise provides that private property shall not be taken or damaged for public use without just compensation as provided by law. Ill. Const. 1970, art. I, § 15.

Court did not hold that determining a property's value as of a date other than the date of taking is unconstitutional. Instead, it held that "if the result" of the procedure used to determine a property's value "is to provide the owner substantially less than the fair market value of his property on the date the [condemning authority] tenders payment, it violates the Fifth Amendment." *Id.* at 17.

¶ 32    In *Kirby*, the federal government filed a condemnation action in 1978 to acquire land from a manufacturer of forest products. *Id.* at 6-7. The procedure used in that case was a "straight[ ] condemnation," in which the value of the land being taken was determined by the trier of fact prior to the time of the government's final decision about whether to actually tender payment; only if the government decided to tender payment did title and right to possession vest in it. *Id.* at 3-4. The district court referred the matter to a special commission to ascertain the compensation due, and a trial occurred before that commission in 1979. *Id.* at 7. After the commission entered a report on its recommendation as to just compensation, both parties filed objections to it in district court, and those objections were not resolved until 1981. *Id.* at 8. In 1982, the United States deposited the amount of the judgment into the registry of the district court, at which time it acquired title to the land. *Id.*

¶ 33    The Supreme Court took the case to resolve the issue of "the date on which the taking, in a 'straight-condemnation' proceeding, should be deemed to occur" and whether the government was obligated to pay interest. *Id.* at 9. The Court recognized its earlier holding that, " '[u]nless a taking has occurred previously in actuality or by a statutory provision …, we are of the view that the taking in a condemnation suit under this statute takes place upon the payment of the money award by the condemnor.' " *Id.* at 11 (quoting *Danforth v. United States*, 308 U.S. 271, 284 (1939)). It recognized the rule that title does not pass until compensation has been ascertained and paid. *Id.* at 12. Thus, the Court held that the date of "taking" in the case before it was in 1982, when the

government tendered payment and acquired title to the property. *Id.* at 16.

¶ 34 The Court went on to address whether the award itself satisfied the requirements of the fifth amendment, recognizing in doing so that the owner of land taken is "constitutionally entitled to the fair market value of its property on the date of taking." *Id.* The landowner's argument was that it was being denied its right to just compensation to the extent that it was only receiving the value of the land as of the time of trial in 1979, not the value as of the date of taking in 1982. *Id.* The government argued that it was imperative that the trier of fact be given a fixed date of valuation in a condemnation case and that, as of the time of trial, the date upon which the government will ultimately pay for the property is unknown and cannot feasibly be used as the date of valuation. *Id.* at 16-17. The Court went on to hold, though, that "[h]owever reasonable it may be to designate the date of trial as the date of valuation, if the result of that approach is to provide the owner substantially less than the fair market value of his property on the date the United States tenders payment, it violates the Fifth Amendment." *Id.* at 17.

¶ 35 Notably, the Court stated nothing that would indicate that the valuation procedure in the case before it, which had valued the property as of the time of trial, was constitutionally infirm. Rather, it identified that the solution to the problem was having "a procedure for modifying a condemnation award when there is a substantial delay between the date of valuation and the date the judgment is paid, during which time the value of the land changes materially." *Id.* at 17-18. The Court recognized that a posttrial motion for relief from the judgment under Federal Rule of Civil Procedure 60(b) would be such a procedure and that the parties would be limited to presenting "evidence and arguments on the issue of how the market value of the property altered between [the date of valuation] and the date on which the judgment was paid by the Government." *Id.* at 18.

¶ 36 In *Forest Preserve District*, 2011 IL 110759, ¶ 2, the Illinois Supreme Court considered

whether the date of taking under Illinois law was the statutory date of valuation (*i.e.*, the date of filing the complaint) or the date that the condemning authority was given title and the right to possess the property, and whether the fifth amendment as interpreted by *Kirby* required a hearing to determine if the property's value had materially changed since the date of the complaint's filing. The case involved a situation in which a complaint for condemnation had been filed in 1999, the quick-take procedure was not employed, and the case did not go to trial until 2007. *Id.* ¶ 1. At the time of the complaint's filing, section 7-121 of the Eminent Domain Act set the date of filing the complaint as the valuation date for purposes of determining just compensation, and it provided no authorization for modifying that valuation date. *Id.* (citing 735 ILCS 5/7-121 (West 1998)).

¶ 37        Four months prior to the trial, the defendant landowners filed a motion asking the trial court to schedule a posttrial evidentiary hearing as contemplated by *Kirby*. *Id.* ¶ 9. They alleged that the value of the land at issue had substantially increased in value since 1999 and that, to be afforded their constitutional right to just compensation, a posttrial hearing was necessary to determine whether the value of the subject property had materially changed between 1999 and whatever date that the amount of the condemnation award was eventually placed into deposit following the trial. *Id.* They argued that, while then-section 7-121 mandated valuation as of the date of filing, the constitution requires that just compensation be measured as of the date of taking, which is the date that the government deposits the amount of the jury award. *Id.* ¶ 10. They argued that *Kirby* provided "a remedy for the problem by allowing for a posttrial hearing to modify the value awarded if a substantial delay has caused a material change in the value of the land." *Id.* The trial court denied the defendants' motion. *Id.* ¶ 11.

¶ 38        The case proceeded to trial, and the jury entered a verdict determining the fair market value of the property as of 1999. *Id.* ¶ 12. The defendants then filed a posttrial motion, which again raised

the constitutional argument that the just compensation clause of the fifth amendment as interpreted in *Kirby* "required the trial court to hold a hearing to determine the appropriate adjustment to the jury verdict to accommodate for the increase in value" between 1999 and 2007. *Id.* ¶ 13. They attached to their motion an appraisal showing that the property's value as of 2007, when the Forest Preserve District deposited the amount of the jury verdict, was almost $15 million more than the jury's determination of its 1999 valuation. *Id.* The trial court denied the posttrial motion. *Id.*

¶ 39 The defendants appealed, and the appellate court held that a posttrial evidentiary hearing was required to determine whether " 'application of section 7-121 did not provide just compensation in this case.' " *Id.* ¶ 16 (quoting *Forest Preserve District of Du Page County v. First National Bank of Franklin Park*, 401 Ill. App. 3d 966, 1004 (2010)). The appellate court vacated the verdict valuing the property, subject to possible reinstatement following the hearing on just compensation on remand. *Id.* ¶ 16 (citing *Forest Preserve District*, 401 Ill. App. 3d at 1006). The supreme court allowed the petition for leave to appeal, and it addressed "whether the appellate court correctly applied *Kirby* to order a hearing on remand to determine if the property has materially increased in value, and if so, to hold another jury trial on valuation." *Id.* ¶ 34. After discussing the facts and analysis of *Kirby*, the supreme court turned to the question of whether, under Illinois law, the date of taking was a date different than the date of filing the complaint, since no "*Kirby* problem" would arise if the dates were the same. *Id.* ¶ 39. However, the court held they were not the same date. It held that "a taking in Illinois for the purposes of applying *Kirby* occurs on the date that the government (1) deposits the amount of compensation that has been ascertained and awarded, *and* (2) acquires title and the right to possess the property." (Emphasis in original.) *Id.* ¶ 40.

¶ 40 Notably, however, the supreme court in *Forest Preserve District* did not hold that then-section 7-121, which mandated that the valuation date was the date of filing the complaint, was

unconstitutional. Rather, the supreme court affirmed the appellate court's vacating of the jury's verdict as to the value of the property, subject to a possible reinstatement "following a hearing on just compensation using the current value of the property." *Id.* ¶ 70.

¶ 41    We find no support for the defendant's argument that *Forest Preserve District* implicitly or "*sub silentio*" invalidated section 10-5-60 of the Eminent Domain Act (735 ILCS 30/10-5-60 (West 2020)). As stated above, neither *Kirby* nor *Forest Preserve District* held that the procedures used in those cases for valuing the property taken were unconstitutional, even though the procedures in both cases valued property at a time other than the date of taking. Rather, those cases recognized that there must be some process or procedure to address the situation in which the value of land changes materially between the date of valuation and the date of taking, to protect a landowner's constitutional right to receive the fair market value as of the date of taking. *Kirby*, 467 U.S. at 16-18 (solution to the problem is a "procedure for modifying a condemnation award when there is a substantial delay between the date of valuation and the date the judgment is paid, during which time the value of the land changes materially"); *Forest Preserve District*, 2011 IL 110759, ¶¶ 16, 70 (remanding for posttrial evidentiary hearing on whether valuation as of date of filing complaint did not provide just compensation).

¶ 42    Here, we believe that section 10-5-60 of the Eminent Domain Act provides a procedure for addressing these constitutional concerns. 735 ILCS 30/10-5-60 (West 2020). This statute became effective in 2007 and replaced section 7-121 of the Eminent Domain Act (735 ILCS 5/7-121 (West 1998)), which was the operative valuation statute in *Forest Preserve District*. See Pub. Act 94-1055, §§ 10-5-60, 95-1-5 (eff. Jan. 1, 2007) (repealing 735 ILCS 5/art. VII and recodifying Eminent Domain Act, as amended, as art. X). As discussed above, section 10-5-60 retains the rule that the date of valuation of property being taken is "the date of filing the complaint to condemn,"

but it allows the trial court to declare a different valuation date "in the interest of justice and equity." 735 ILCS 30/10-5-60 (West 2020). In the case of property being acquired under quick-take provisions, if the trial commences more than two years after filing the complaint, then the statute allows the trial court to declare a valuation date as late as "the date on which the condemning authority took title to the property." *Id.* § 10-5-60(ii). Because title to a property does not vest in a condemning authority until the trial court makes a preliminary finding as to just compensation and that amount is deposited with the county treasurer (*id.* § 20-5-15(a)), section 10-5-60(ii) effectively contemplates that a trial court may declare the date of taking to be the date of valuation in circumstances where justice and equity warrant this result. See *Forest Preserve District*, 2011 IL 110759, ¶ 40 (date of taking is when condemning authority (1) deposits the amount of compensation that has been ascertained and awarded and (2) acquires title and the right to possess the property). Thus, section 10-5-60 allows the necessary flexibility to protect a landowner's constitutional rights in a situation where valuing property as of the date of filing the complaint might not reflect just compensation as of the date of taking.

¶ 43 However, as the trial court noted several times during the argument on this matter, no party ever brought a motion under section 10-5-60(ii) seeking to have the trial court declare a date of valuation that was different than the date of filing the complaint for condemnation. The court also noted that there had been no evidence put before it that the value of the subject property had materially changed in the three months between August 25, 2015, and November 19, 2015. Our review of the record confirms that there was never any evidence presented prior to trial, at the trial itself, or in a posttrial motion that would suggest that the value of the subject property was different as of these two dates. We believe that such evidence is necessary, either to show why declaring a valuation date other than the date of filing was in "the interest of justice and equity" (735 ILCS

30/10-5-60(ii) (West 2020)) or why determining value as of the date of filing deprived the defendant of its constitutional right to just compensation. Because the defendant never sought to make use of the statutory provision that would have permitted the trial court to declare a valuation date different than the date of filing and because there was no evidence of any change in the value of the subject property in the three months between the date of filing and the date of taking, we find no error on the part of the trial court in using the date of filing the complaint as the date of valuation in this case.

¶ 44     Furthermore, we reject the defendant's assertion that multiple courts have recognized that "the 'date of filing' rule has been overruled by the 'date of taking' rule." The defendant cites one of these cases, *BNSF Ry. Co. v. Grohne*, 2019 IL App (3d) 180063, ¶ 84, for its statement that an owner of land taken is "entitled to just compensation valued on the day of the taking." However, this is not the same thing as stating the operative date for determining a property's value in a condemnation proceeding must be the date of taking, a distinction that we have discussed above. Moreover, the court made this statement in the context of analyzing whether the evidence showed that the subject property's value had "substantially and materially" changed in the three years between the filing of the complaint and the trial date, so as to justify the trial court's granting of the landowner's motion to declare a valuation date shortly prior to the trial. *Id.* ¶¶ 78-84. The appellate court noted that the evidence was that the value of one parcel of the subject property had increased by 39% between the time of filing and trial and that the value of other parcels had increased by 25%. *Id.* ¶ 84. Thus, after recognizing that the defendant landowner was entitled to just compensation on the date of taking, the court held that the trial court had not abused its discretion in granting a new valuation date closer to the trial. *Id.* In this case, by contrast, there was no evidence of any change in the subject property's value during the three months between the

date of filing and the date of taking. For these reasons, we conclude that *Grohne* provides no support for the defendant's arguments.

¶ 45      The defendant also cites an unpublished federal case, *City of Joliet v. Mid-City National Bank of Chicago*, No. 05 C 6746, 2012 WL 5463792, *1-2 (N.D. Ill. Nov. 5, 2012), in which the federal district court granted an unopposed motion *in limine* by the defendants to establish a valuation date of 2012 in a case where the complaint had been filed in 2005. The court noted that 2012 would be the earliest possible year in which the City of Joliet could take possession of and pay for the property at issue. *Id.* at *1. In granting this unopposed motion, the district court engaged in no detailed analysis of this issue. It stated, however, that in *Forest Preserve District*, the Illinois Supreme Court had relied on *Kirby* and "struck down the 'date of filing rule' " and in its place "adopted a 'date of taking rule,' holding that 'a taking in Illinois for the purposes of applying *Kirby* occurs on the date that the government (1) deposits the amount of compensation that has been ascertained and awarded, *and* (2) acquires title and the right to possess the property.' " (Emphasis in original.) *Id.* (quoting *Forest Preserve District*, 2011 IL 110759, ¶ 40, and citing *Kirby*, 467 U.S. 1). The district court's statement is not an accurate summary of the holding of *Forest Preserve District*. As explained in detail above, the supreme court did not strike down the date-of-filing rule or adopt a date-of-taking rule in its place. As a federal district court decision, especially an unpublished one, *City of Joliet* is not precedential or binding authority on this court. *Joseph T. Ryerson & Son, Inc. v. Travelers Indemnity Co. of America*, 2020 IL App (1st) 182491, ¶ 57. We reject the argument that *City of Joliet* requires the conclusion that the trial court erred by using the date of filing the complaint as the date of valuation in this case or by allowing expert testimony premised on this valuation date.

¶ 46                              B. Continuance of Trial

¶ 47    The defendant's second argument on appeal is that the trial court abused its discretion when it denied the defendant's request to continue the jury trial to allow the defendant's expert witness on valuation, who was out of state, to return to Illinois to testify. According to the defendant, there was confusion about the date on which the trial was set to begin, stemming from the fact that the orders setting the case for trial on February 10, 2020, were "superseded" by two later orders: (1) the January 21, 2020, order setting the hearing on any motions *in limine* and pretrial conference for February 10, 2020, and (2) the January 29, 2020, order by the presiding judge of the law division scheduling the case for trial-setting on February 20, 2020. Apparently as a result of this confusion about the trial date, the defendant's attorneys had not secured Renzi's availability for trial starting that day. The defendant argues that it was prejudiced by the refusal of a short continuance because it was unable to present any evidence as to just compensation. It asserts there would have been no prejudice to the Toll Highway Authority from the granting of a short continuance, as it had already obtained title to and possession of the subject property and there was no indication that its own witnesses would be unavailable in the future.

¶ 48    A litigant does not have an absolute right to a continuance, and the decision to grant or deny a motion for continuance is vested in the sound discretion of the trial court. *Grauer v. Clare Oaks*, 2019 IL App (1st) 180835, ¶ 55. A party seeking a continuance once the case has reached the trial stage must provide the court with an especially compelling reason for a continuance because of the inconvenience caused to the other parties, attorneys, witnesses, and the court. *Id.* A reviewing court will not reverse a trial court's denial of a continuance unless it has resulted in a palpable injustice or constitutes a manifest abuse of discretion. *Id.*

¶ 49    The trial court did not abuse its discretion in denying the defendant's request to continue the trial. Although we recognize that the defendant's attorneys came into the case late, the appearance

for attorney Landis's law firm was nevertheless filed on December 12, 2019, nearly two months prior to the trial date of February 10, 2020. Thus, it appears mostly to be the defendant's attorneys' own failure during that time to resolve any confusion they had about whether trial was set to commence on February 10, which led to Renzi not being available for trial or his testimony otherwise not being secured through an evidence deposition. As noted by the trial judge, the case had been scheduled for trial that day since the previous July, and multiple court orders reference the fact that trial was set for that day. On January 21, 2020, the court had granted a motion for a jury view of the subject premises set for February 14, 2020, which should have signaled that the case would be going to trial that week. In fact, the trial judge stated that she personally recalled saying to attorney Landis on January 21 that the case was going to jury trial on February 10. The judge further noted that, the week prior to February 10, the court's clerk had spoken to an attorney from Landis's law firm about the presiding judge's order scheduling the case for trial-setting on February 20, and the court's clerk had clarified that the case was going to jury trial on February 10. Also, the trial court had blocked all other matters from its calendar in order to conduct a jury trial starting that day, and the Toll Highway Authority had its valuation witness available. Given these reasons, we cannot say that the trial court's denial of the defendant's request for a continuance of the trial was a manifest abuse of discretion.

¶ 50                          III. CONCLUSION

¶ 51        For the reasons set forth above, the judgment of the trial court is affirmed.

¶ 52        Affirmed.

**No. 1-20-0813**

| | |
|---|---|
| **Cite as:** | *Illinois State Toll Highway Authority v. Chicago Title Land Trust Co.*, 2021 IL App (1st) 200813 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 15-L-50611; the Hon. Mary Colleen Roberts, Judge, presiding. |
| **Attorneys for Appellant:** | Lenny D. Asaro and Ehren Fournier, of Faegre Drinker Biddle & Reath LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Christopher M.R. Turner, Assistant Attorney General, of counsel), for appellee. |